58 A.3d 609

**Samuel ANTAR, et al.**

v.

**The MIKE EGAN INSURANCE AGENCY, INC., et al.**

No. 1481, Sept. Term, 2011.

Court of Special Appeals of Maryland.

Dec. 21, 2012.

E. David Hoskins, Baltimore, MD, for Appellant.

Erin Risch, Hanover, MD, and Lauren M. Burnette, Harrisburg, PA (Marshall, Dennehey Warner, Coleman & Goggin, Harrisburg, PA, on the brief), for Appellee.

Panel: EYLER, DEBORAH S., WRIGHT, CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

MOYLAN, J.

Early Twentieth Century viewers were frozen to their nickelodeons by the heart-stopping melodrama "Curfew Shall Not

Ring Tonight." [1]  With her lover Basil doomed to the gallows at the ringing of the curfew bell, the beleaguered Bess strove heroically and against every manner of complication to hold back the inexorable ticking of the clock.  In the melodrama, the damsel in distress, unlike the appellants facing a deadline in the case at hand, ultimately prevailed, climbing to the top of the belfry and strapping herself to the bell's clapper to muffle its sound with her battered body.  Notwithstanding the emotional tug of "Curfew Shall Not Ring Tonight," our more prosaic caption for the real-life limitations struggle now before us must be "Time Marches On." [2]

### The Present Case

The appellants, Samuel and Rose Antar and Solomon and Gloria Lewittman, owned the building at 321 North Howard Street in Baltimore City. On August 31, 2006, they obtained an insurance policy from one of the appellees, the Mt. Vernon Fire Insurance Company.  They obtained the policy through the other appellee, the Mike Egan Insurance Agency, Inc. On July 13, 2007, the insured building was destroyed by fire.  The appellants submitted a claim to Mt. Vernon for their loss.  Mt. Vernon denied the claim after a post-fire inspection revealed that the building lacked the smoke and heat detectors required under the terms of the policy.  That denial of the claim was the basis for the suit brought by the appellants against Mt. Vernon.

The date of the accrual of a cause of action is, of course, the vital starting point for computing a deadline under a statute of limitations.  In the present case, no one has satisfactorily established the precise date on which Mt. Vernon refused to

---

1.  Two silent film versions of the story, set in Cromwellian England, were based on the 1867 poem by Rose Hartwick Thorpe, originally titled "Curfew Must Not Ring Tonight."  It was a great favorite of Queen Victoria.

2.  From 1935 to 1951, the "March of Time" was a prestigious favorite on the moviegoer's menu of selected short subjects.  After examining in some depth a subject of national or international concern, each episode concluded with the crack-of-doom sign-off, "Time marches on."

honor the appellants' claim. All parties agree, however, that the accrual date was no later than February 4, 2008, when the appellants filed their claim against Mt. Vernon in Pennsylvania. Although the limitations clock may already have been ticking for some weeks or even months before February 4, 2008, all parties are content to accept, as a point of departure for reckoning limitations, that the clock was ticking as of that day.

As a calculated trial tactic to take advantage of Pennsylvania's Bad Faith Statute, the appellants' suit against Mt. Vernon on February 4, 2008 was not filed in Baltimore City, or anywhere in Maryland, but in the Court of Common Pleas of Philadelphia County, Pennsylvania, alleging claims for breach of contract and bad faith. Mt. Vernon successfully joined the Mike Egan Agency as an additional party defendant in the Philadelphia County action.

On June 18, 2008, Mt. Vernon filed a motion to dismiss the suit in Philadelphia County on the grounds of *forum non conveniens.* On July 24, 2008, the Philadelphia County court granted Mt. Vernon's motion and dismissed the case, with leave to refile in Maryland. Not happy to leave Pennsylvania, the appellants sought appellate review of the Philadelphia County court's dismissal of their case. By Memorandum Opinion of June 15, 2010, the Pennsylvania Superior Court (the intermediate appellate court) affirmed the trial court's dismissal order. The appellants' subsequent motion for a rehearing was denied. Appellants did not seek review by the Pennsylvania Supreme Court. The order of the Superior Court was ultimately entered on the docket of the Philadelphia County Court of Common Pleas on September 27, 2010.

On May 18, 2011, the appellants first filed suit against both appellees in the Circuit Court for Baltimore City, alleging a breach of contract claim against Mt. Vernon and a negligence claim against the Mike Egan Agency. Both appellees moved for a dismissal of the suit as time-barred by the Statute of Limitations. Following a hearing on August 17, 2011, Judge Althea Handy granted the motions to dismiss the suit with

prejudice. The appellants' motion for reconsideration was denied and this appeal followed.

### The Appellants' Contention

All hands agree that the Maryland three-year Statute of Limitations for the present suit began running no later than February 4, 2008. In the ordinary course of events the filing deadline for the suit in Maryland would have been February 4, 2011. The suit ultimately filed in the Circuit Court for Baltimore City on May 18, 2011 would have been three months and two weeks beyond that ordinary filing deadline and would, therefore, have been time-barred.

The appellants contend, however, that the running of the limitations period in Maryland should have been tolled for the entire length of time that the suit was pending in Pennsylvania. It is their argument that the limitations clock in Maryland was frozen and did not continue to tick (or in this case did not even begin to tick) as of the moment the suit was filed in Philadelphia County. Their position is that time went into suspended animation and that the clock only resumed ticking after the litigation in Pennsylvania was finally concluded.

The appellants are a little vague as to their candidate for the terminal date of the case in Pennsylvania. It may have been July 24, 2008, when the Philadelphia County trial court dismissed the case on the ground of *forum non conveniens.* If Maryland limitations only resumed (or began) computing as of that date, the filing deadline in Maryland would have been July 24, 2011. The appellants, more grandiosely, further argue that the period of suspended animation may actually have continued until June 15, 2010, when the intermediate appellate court in Pennsylvania by Memorandum Opinion denied their appeal of the trial court's dismissal, which had come two years earlier. Under such a deferred terminal date, the Maryland filing deadline would not, indeed, be reached for yet another eight months.

The appellants cite no authority for so extreme a suspension of animation, one that would literally freeze time in its tracks.

We know of none. The appellants, moreover, are twice bereft. They lose on the facts of their case, whatever the law, as we shall examine *infra*. Even if the facts were more favorable to their cause, however, they would still lose on the law. We look first to the law.

### The Statute of Limitations.

To get the subject matter before us in proper perspective, it is appropriate to take note of the fact that we are not dealing with a common law of limitations or with some judicial doctrine of limitations. We are dealing with the *Statute* of Limitations. As the noun "Statute" expressly states, we are dealing with a legislative policy determination to establish a definite and certain deadline for the filing of a civil lawsuit, notwithstanding the fact that an occasional injustice or hardship might sometimes result from such an arbitrary and definite legislative pronouncement. Maryland Code, Courts and Judicial Proceedings Article, § 5–101 expressly states:

> *A civil action at law shall be filed within three years from the date it accrues* unless another provision of the Code provides a different period of time within which an action shall be commenced.

(Emphasis supplied).

Deferring for the moment any consideration of the possibility of tolling, we can state that the cause of action in this case accrued no later than February 4, 2008. *Russo v. Ascher*, 76 Md.App. 465, 469, 545 A.2d 714 (1988); *Bacon & Assocs. v. Rolly Tasker Sails (Thai.) Co.*, 154 Md.App. 617, 634–37, 841 A.2d 53 (2004). Absent the possibility of tolling, the statutory filing deadline for the claim in Maryland thereby became February 4, 2011 and the suit filed in the Circuit Court for Baltimore City on May 18, 2011, therefore, was time-barred by the Statute of Limitations and was properly dismissed for that reason. This is the norm from which analysis begins.

### *Walko v. Burger Chef:* Limitations Are Legislatively Mandated

Why is this so? There is a lot more to appellate decision-making than simply doing a patch test, comparing the facts in

the case at hand to the facts in cases cited by the appellants and the appellees respectively. Simply to compare a set of facts to other sets of facts is a trivializing exercise, almost always guaranteed to miss the bigger issues. A deeper reality is in play. There is an overarching social policy that illuminates this entire area of related decision-making. On the purpose and value of limitations, the guiding philosophy has nowhere been so cogently expressed as by Judge Irvine Levine for the Court of Appeals in *Walko Corporation v. Burger Chef Systems, Inc.*, 281 Md. 207, 378 A.2d 1100 (1977). The precise question before the Court, on certification from the United States Court of Appeals for the District of Columbia Circuit, was whether the Statute of Limitations in Maryland would be tolled by the pendency of the appellant's motion for leave to intervene in a civil action in the United States District Court for the District of Columbia. The Court of Appeals certified that the Statute of Limitations in Maryland would not be tolled.

That holding itself was relatively narrow, but the statement of controlling principle was far broader. Judge Levine quoted with approval from the Supreme Court in *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945), in describing the values served by limitations statutes:

> "*Statutes of limitation find their justification in necessity and convenience* rather than in logic. They represent expedients, rather than principles. *They are practical and pragmatic devices to spare the courts from litigation of stale claims,* and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost .... (citation omitted). *They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the avoidable and unavoidable delay. They have come into the law* not through the judicial process but *through legisla-*

*tion. They represent a public policy about the privilege to litigate."*

281 Md. at 210, 378 A.2d 1100 (emphasis supplied).

The Court of Appeals then spoke for itself in explaining that the Statute of Limitations is virtually an absolute bar that permits very little by way of exception:

> This policy of repose has fostered *a traditional rule concerning the tolling of statutes* of limitation *that can be fairly termed one of strict construction. Early on we adopted this rigorous stance:* "The principle of law is indisputable, that when the Statute of Limitations once begins to run, nothing will stop or impede its operation." *Ruff v. Bull,* 7 H. & J. 14, 16, 16 Am.Dec. 290 (1825); *accord, Gibbons v. Heiskell,* 90 Md. 6, 9, 44 A. 996 (1899); *Young v. Mackall,* 4 Md. 362, 374 (1853). *The rule has lost little of its vitality.* As we said far more recently in *Burket v. Aldridge, Adm'r,* 241 Md. at 429 [216 A.2d 910], *the principle* enunciated in *Ruff, "while not immutable under all circumstances, . . . is still the general legal approach."*

281 Md. at 210–11, 378 A.2d 1100 (emphasis supplied).

The appellants claim that to allow a tolling of the Statute of Limitations during the pending of their litigation in Pennsylvania would be within the spirit and reason of the statute. Judge Levine, however, quotes with approval from *McMahan v. Dorchester Fert. Co.,* 184 Md. 155, 160, 40 A.2d 313 (1944):

> [W]here the Legislature has not made an exception in express words in the Statute of limitations, *the Court cannot allow any implied and equitable exception* to be engrafted upon the statute *merely on the ground that such exception would be within the spirit or reason of the statute.*

(Emphasis supplied).

Even in a situation far harsher than the one at bar, one wherein limitations had actually run out during the pendency of the suit in a foreign court, the Court of Appeals in *Walko* was steadfast that no bending of the rule would be permitted.

*This* venerable *rule,* which *defers to the legislative intent* expressed in the statute of limitations itself, *and avoids implied exceptions* or strained constructions, is also applicable in cases such as the one at bar where an action filed initially within the required period fails for some technical, procedural defect falling short of a full decision on the merits. *Absent a statutory provision saving the plaintiff's rights, the remedy is barred where limitations has run during the pendency of the defective suit.*

281 Md. at 211–12, 378 A.2d 1100 (emphasis supplied).

In *Bragunier Masonry Contractors v. Catholic University of America,* 368 Md. 608, 627, 796 A.2d 744 (2002), the Court of Appeals reaffirmed its deference to the Legislature's determination as to the demands of judicial economy:

*Statutes of limitations, . . . are intended* simultaneously to provide adequate time for diligent plaintiffs to file suit, to grant repose to defendants when plaintiffs have tarried for an unreasonable period of time, and *to serve societal purposes, including judicial economy.* There is no magic to a three-year limit. It simply represents the legislature's judgment about the reasonable time needed to institute suit.

(Emphasis supplied). See also *Kumar v. Dhanda,* 426 Md. 185, 209, 43 A.3d 1029 (2012) ("We have repeatedly touted the value of statutes of limitations as not only ensuring fairness between the parties, but also as essential to judicial economy and the pursuit of diligence in litigation."); *Hecht v. Resolution Trust Corp.,* 333 Md. 324, 338, 635 A.2d 394 (1994) ("[T]he purposes of statutes of limitations are to provide adequate time for a diligent plaintiff to bring suit as well as to ensure fairness to defendants by encouraging prompt filing of claims."); *Pierce v. Johns–Manville Sales Corp.,* 296 Md. 656, 665, 464 A.2d 1020 (1983).

### *Bertonazzi v. Hillman:* How To Read It And How Not To Apply It

The appellants, however, lean heavily on *Bertonazzi v. Hillman,* 241 Md. 361, 216 A.2d 723 (1966). They seek to

utilize it as a launching pad for wide-ranging judicially created exceptions to the perceived harshness of the Statute of Limitations. They would thereby turn a legislative judgment as to a filing deadline into judicial balancing of competing equities, conferring on the judicial branch broad discretion to ameliorate the stern commands of the legislative branch. The appellants argue to this Court as if we were commissioned to write limitations law in the first instance. We are not. *Bertonazzi* cannot be read as sanctioning so sweeping a judicial override of what in the last analysis is the legislative prerogative.

### A.   How To Read *Bertonazzi*

*Bertonazzi*, to be sure, did carve out a small and narrow exception to the mechanically harsh application of the Statute of Limitations that at that time prevailed. In that case the Court of Appeals was not dealing with the general three-year Statute of Limitations, but with the six-month period of limitations following the qualification of a personal representative within which a suit against the estate of a deceased tortfeasor must be filed under what was Maryland Code (1964 Replacement Vol.), Art. 93, § 112. The general principles announced by the *Bertonazzi* opinion, however, would apply to the more general Statute of Limitations as well.

Suit should have been brought against the deceased tortfeasor Hillman or Hillman's personal representative in Baltimore City. The Hillman residence, however, was located right on the Baltimore City–Baltimore County line. The plaintiff's lawyer looked at a map and, as he later testified, "read it wrong," erroneously concluding that the residence was on the Baltimore County side of the line. Suit was accordingly but erroneously filed in Baltimore County.

The case came on for a hearing in Baltimore County six months and fourteen days after Hillman's personal representative had qualified and fourteen days, therefore, after the statutory filing deadline. The defense motion to dismiss the suit was granted on the ground that neither the plaintiff nor

the defendant actually lived in Baltimore County and that Baltimore County was an improper venue to hear the case. The motion to dismiss was granted on September 4, 1963. Bertonazzi's attorney immediately refiled the suit in Baltimore City, within one to two hours later. At a subsequent hearing in Baltimore City, however, the trial court granted Mrs. Hillman's motion to dismiss the case on the ground that it had not been filed until after limitations had run. Judge Hammond's opinion, 241 Md. at 365, 216 A.2d 723, pinpointed the issue before the Court of Appeals:

> *Appellant can have the case heard* on the merits *only if the filing of the suit in Baltimore County tolled the statutory period of limitations* long enough for the final suit in Baltimore City to have been filed in time.

(Emphasis supplied).

In reversing the trial court and holding in favor of Bertonazzi, the Court of Appeals was "persuaded that the six months' limitations period was tolled" when the plaintiff "commenced an action in Baltimore County within six calendar months after the date of the qualification of the administratrix." 241 Md. at 365, 216 A.2d 723. Unlike the present case dealing with a difference between states (Maryland and Pennsylvania), the *Bertonazzi* opinion considered significant the fact that Baltimore County, albeit the wrong venue, nonetheless actually had jurisdiction over the subject matter:

> *The Baltimore County court had jurisdiction of the subject matter and it had power to issue process which could be effectively served on a defendant anywhere in the State* . . . . Appellant took steps to enforce a right in Baltimore County and . . . the steps she took amounted . . . to commencement of an action. *Since the Baltimore County court had jurisdiction of the subject matter* and of the parties, *the case would have been tried and decided on the merits unless the defendant chose to assert the personal right given her* by Code *to avoid the inconvenience of defending a suit in a county in which she neither lived* personally or officially nor worked (an inconvenience which, if it existed at all, would

have been minimal in the present case) in a timely manner before submitting to the venue.

241 Md. at 365–66, 216 A.2d 723 (emphasis supplied).

A trial of Bertonazzi's suit in Baltimore County would have produced an effective decision on the merits, whereas in the case at hand a trial in Philadelphia County would not have been an effective trial on the merits of the subsequent Maryland suit.

> There can be no doubt that *if the appellee,* the defendant below, *had not asserted improper venue and the case had remained in Baltimore County, the appellant would have timely commenced an action* to recover for personal injuries under § 112 of the Code, *and the statute of limitations built into that section would not have been operative to defeat the claimant's right to seek damages. We see no compelling reason why the filing of the timely commenced action* in court *should not* have the same effect until its dismissal for improper venue and *be deemed to have interrupted the running of the statute* from the date of its filing on July 18 to the date of its dismissal on September 4, a period of forty-four days.

241 Md. at 366, 216 A.2d 723 (emphasis supplied).

## B. A Reader's Guide To *Bertonazzi*

Because of the extreme accumulation of extenuating circumstances, *Bertonazzi* is essentially *sui generis,* if not actually aberrational. In *Walko v. Burger Chef,* 281 Md. at 213, 378 A.2d 1100, Judge Levine gave us a good interpretive guide for reading *Bertonazzi:*

> At first blush, *Bertonazzi v. Hillman* would appear to stand as authority for the broad proposition that under Maryland law the running of the limitations period is tolled by a procedurally defective action which is timely filed. *This is not borne out,* however, *by an analysis of that case.*

(Emphasis supplied). The Court of Appeals characterized *Bertonazzi* as a "narrow exception":

*In Bertonazzi the Court carved out a narrow exception to the traditional rule against engrafting implied exceptions upon the statute of limitations* in certain situations where the sole reason for the dismissal of the prior action was improper venue. In doing so, *the Court noted that Maryland was one of but a mere handful of states having neither a saving statute nor a venue transfer statute.*

281 Md. at 214, 378 A.2d 1100 (emphasis supplied). There is a suggestion there that the *Bertonazzi* exception might never have come to pass if Maryland at the time had actually had a saving statute.

Judge Levine's unambiguous conclusion was that *Bertonazzi* "stands alone" and is "confined to [its own] special circumstances":

*Just how narrow the Bertonazzi exception was intended to be was promptly demonstrated in Burket v. Aldridge, Adm'r,* 241 Md. at 423 [216 A.2d 910], decided a day later. There, suit was initially filed within the required three-year period, but the sheriff's return of "mortuus est" revealed to the plaintiff that the defendant had died. Service was then made upon the personal representative within the six months required by Art. 93, § 112, but not within the three-year statute of limitations. In affirming a dismissal, we held that it was necessary for the suit to be filed "both within three years from the date of the injuries and within six months from the qualification of the personal representative." *Id.* at 430 [216 A.2d 910]. *Bertonazzi stands alone,* then, *confined to the special circumstances which culminated in the filing of the suit in the wrong county.*[3]

281 Md. at 214, 378 A.2d 1100 (emphasis supplied).

As *Walko* pointed out, 281 Md. at 214, 378 A.2d 1100, *Burket v. Aldridge, Adm'r,* 241 Md. 423, 216 A.2d 910 (1966),

---

**3.** Professor Max Radin once observed that when an appellate court confines one of its precedents "to its own facts," that is the way the appellate court has of "administering euthanasia to its own non-viable progeny." Radin, "The Supreme Court and Military Duty," 6 *St. John's*

was decided by the Court of Appeals one day after the filing of *Bertonazzi* and was a sobering reminder that *Bertonazzi* was not the open-ended boon that the appellants would like it to be. The plaintiff Burket had filed suit against his alleged tortfeasor three days before the running of the Statute of Limitations. Unknown to the plaintiff, however, the putative defendant had died eight months earlier and the summons was returned "mortuus est." As Judge Oppenheimer pointed out, the mistaken filing was, therefore, a nullity:

> [T]he action filed by Burket against Smith, a few days before the expiration of the three year period from the date of the injuries, *had no legal effect.* Smith was dead, and *an action brought against a dead man is a nullity.*

241 Md. at 430, 216 A.2d 910 (emphasis supplied).

The subsequent substitution of the tortfeasor's personal representative as the party defendant was held to be the actual commencement of a new action and it came after the three-year limitations period had run:

> Smith's Administrator was appointed after the three year period had run, and, *while the Administrator was thereafter substituted as a party defendant,* less than two months after his appointment, *the substitution was subsequent to the expiration of the three year period.*

241 Md. at 430–31, 216 A.2d 910 (emphasis supplied).

Suit was dismissed as time-barred. Judge Oppenheimer's words, 241 Md. at 429, 216 A.2d 910, express the Court of Appeals's generally militant support for the Statute of Limitations and its unforgiving attitude toward possible exceptions:

> The principle that, *when the Statute of Limitations begins to run, nothing will stop or impede its operation,* while not immutable under all circumstances, *is still the general legal approach.*

(Emphasis supplied). See also *McMahan v. Dorchester Fertilizer Corp.*, 184 Md. 155, 160, 40 A.2d 313 (1944); *Booth*

---

L.Rev. 38, 46 (1931–32). *Walko* effectively administered euthanasia to *Bertonazzi.*

*Glass Co. v. Huntingfield Corp.*, 304 Md. 615, 624, 500 A.2d 641 (1985) ("In Maryland, it is well settled that equitable estoppel will not toll the running of limitations absent a showing that the defendant 'held out any inducements not to file suit or indicated that limitations would not be pleaded.' "); *Kumar v. Dhanda*, 198 Md.App. 337, 353, 17 A.3d 744 (2011).

In *Baker, Watts & Co. v. Miles & Stockbridge*, 95 Md.App. 145, 620 A.2d 356 (1993), Judge Harrell spoke for this Court as we endorsed *Walko's* restrictive reading of *Bertonazzi*. The appellant in *Baker, Watts* had "attempt[ed] to argue that, in general, a defense of statute of limitations is disfavored and should be sparingly granted." 95 Md.App. at 194, 620 A.2d 356. In resoundingly rejecting that argument, Judge Harrell pointed out that the "Court of Appeals' holding in *Walko* . . . clarifies its decision in *Bertonazzi* " and then went on to quote extensively with approval from *Walko*, including its interpretation that "*Bertonazzi* stands alone" and is "confined to the special circumstances" of that case. 95 Md.App. at 194–95, 620 A.2d 356.

How then do we read *Bertonazzi?* Even if it be true that hard cases make bad law, the circumstances that made *Bertonazzi* a hard case no longer exist. *Bertonazzi* has, in effect, been reduced to a lifeless hypothetical. Notwithstanding the fact that the case would not be decided today as it was in 1966, it nonetheless still haunts us as it is regularly and promiscuously invoked, as it was in the present case, as a proffered "Open, Sesame" for every conceivable variety of tolling exception.[4]

## C. How Not To Apply *Bertonazzi*

The differences between the present case and *Bertonazzi* are profound. Geographically and jurisdictionally, the transfer in *Bertonazzi* was between two adjacent venues dealing

---

4. The trouble appears to be that although *Walko* pulled no punches, the post-*Walko* caselaw has simply been too polite to serve as an effective stake to the heart. The opinion remains a chronic nuisance, and we have to continue to explain it away on a case-by-case basis.

with precisely the same cause of action under the same state law. In this case, the removal was from Pennsylvania to Maryland with different laws and different procedures. In *Bertonazzi* the filing in Baltimore County was the result of a mistake made in good faith. In this case, the filing in Philadelphia County was the result of a deliberate trial stratagem.

In *Bertonazzi* the plaintiff was a whirlwind of diligence, filing his claim in Baltimore City within less than two hours after it had been dismissed in Baltimore County. In this case, in sluggish contrast, the plaintiffs filed their claim in Baltimore City two years and eleven months after the case had been dismissed in Philadelphia County [5] and eleven months after the Pennsylvania intermediate appellate court had affirmed the dismissal.[6]

In *Bertonazzi* the plaintiff had no reason to be alert to the possible need for a protective filing. In this case, the plaintiffs had every reason to be alert to such a possible need from

---

**5.** Although the refiling of the suit in Maryland was time-barred in either event, we think July 24, 2008 is the better date from which to figure the beginning of Maryland Rule 2–101(b)'s 30–day grace period for refiling in Maryland. The rule expressly refers to the permitted refiling as one coming "within 30 days after the entry of the order of dismissal." In this case, of course, the choice of terminal dates does not influence our holding.

**6.** In contrasting the less-than-two-hour diligence in *Bertonazzi* with the 11–day–lethargy in the case before it, the *Walko* Court observed, 281 Md. at 214–15, 378 A.2d 1100:

> Whatever facts may have been present in *Bertonazzi v. Hillman* that moved us to relax the anti-tolling rule, they do not exist here.... [T]here were yet 11 days remaining before expiration of the three-year limitations period following denial of Walko's motion to intervene.... Nevertheless, Walko offers no explanation for its failure to file a separate but timely action.

*Kumar v. Dhanda,* 198 Md.App. at 349, 17 A.3d 744 highlighted the stress that *Walko* had put on the diligence factor:

> The *Walko* Court further reasoned that, given that *the late filing* by the plaintiff *was a consequence of his own failure to exercise ordinary diligence,* permitting tolling would not be consistent with the purpose of "statutes of limitations, which embody 'a legislative judgment of what is deemed an adequate period of time in which "a person of ordinary diligence should bring his action." ' "

(Emphasis supplied).

the very moment the case was filed in Pennsylvania. In *Bertonazzi* the plaintiff was dismissed from Baltimore County as a matter of law and the time for a new filing had already run. In this case, the plaintiffs were dismissed from Philadelphia County as a discretionary matter and months, if not years, were still available for a new filing in Maryland.

*Bertonazzi* was dealing with an unusually harsh set of circumstances wherein a completely sympathetic plaintiff was utterly left without any avenue of relief. Maryland stood in Draconic contrast with the federal courts and with "most of the states of the Union" in offering no succor whatsoever. In *Bertonazzi* the Court of Appeals attached great, if not indeed dispositive, significance to the fact that in Maryland, at that time, there was neither a transfer statute without the need for refiling nor a saving statute:

> *Appellant's difficulty would not arise* in the federal system or *in most of the states of the Union; since almost all have statutes which would permit the transfer of the case from one jurisdiction to another without the need for new service of process or "saving" statutes which, after a plaintiff, in a timely filed suit, finds himself out of court on a ground other than the merits, permit a second suit on the same cause of action within a specified time.* Some states have both types of statute. *Maryland is one of the very few states that has neither.*

241 Md. at 365, 216 A.2d 723 (emphasis supplied).

*Bertonazzi*, 241 Md. at 368, 216 A.2d 723, expressly referred to the type of saving statute, available in most states, that would have provided the necessary relief to a plaintiff such as Mrs. Bertonazzi:

> *The saving statutes of most of the states* which utilize [an equitable tolling exception] *provide that* if an action is "commenced" within good time but is defeated by some technicality unrelated to the merits, *a new action may be brought within a certain specified time, usually six months or a year, and that the second action is to be treated as a continuation of the first,* the effect being that the original

statute of limitations is tolled by the first suit, ineffectual to avoid dismissal as it was.

(Emphasis supplied).

Significantly, both of those deficiencies, rued by *Bertonazzi*, have since been remedied. When the *Bertonazzi* suit was dismissed from Baltimore County, it was terminated, notwithstanding that nothing more was required than a simple transfer of the suit to an immediately adjacent venue. Such a simple transfer, however, was not then authorized. The Court of Appeals understandably took umbrage at this. That arbitrary harshness, however, has since been rectified. As of July 1, 1973, Rule 317 (Repl.Vol.1977) provided for the transfer of venue after a ruling that venue had been sought in the wrong county. In slightly reworded form, former Rule 317 is now Rule 2–327(b), which provides:

> (b) **Improper venue.** *If a court sustains a defense of improper venue but determines that* in the interest of justice *the action should not be dismissed, it may transfer the action to any county in which it could have been brought.*

(Emphasis supplied).

Under the new rule, had it then been available, the *Bertonazzi* case would uneventfully have been transferred from Baltimore County to Baltimore City. It would not have been terminated and it would not, therefore, have had to be commenced all over again. Significantly, no question of limitations would ever have arisen, and there would have been no need for the *Bertonazzi* holding.

In 1992, the second of the two deficiencies noted by *Bertonazzi* was corrected by the enactment of, for the first time in Maryland, a savings statute (actually a rule of court). The appellees refer to this as the "Safe Harbor Provision." As of May 14, 1992, Maryland Rule of Procedure 2–101(b) now provides:

> (b) *After Certain Dismissals by* a **United States District Court or** *a Court of Another State.* Except as otherwise provided by statute, *if an action is filed* in a United States

District Court or *a court of another state within the period of limitations prescribed by Maryland law and that court enters an order of dismissal* (1) for lack of jurisdiction, (2) *because the court declines to exercise jurisdiction,*[7] or (3) because the action is barred by the statute of limitations required to be applied by that court, *an action filed in a circuit court within 30 days after the entry of the order of dismissal shall be treated as timely filed in this State.*

(Emphasis supplied).

The Minutes of the meeting of the Rules Committee held on October 11, 1991, make it clear that the change in the Rules of Procedure accomplished by the addition of subsection (b) to Rule 2–101 was in response to the desire by the Court of Appeals to ameliorate some of the harshness of *Walko v. Burger Chef:*

The Chairman reminded the Committee that the Court of Appeals had requested the Rules Committee to draft a rule that would have the effect of "saving" certain cases that would otherwise be barred by the statute of limitations.

Had such a rule been available in *Bertonazzi* and had the Baltimore County judge, *arguendo,* simply dismissed the claim instead of exercising his discretion to transfer the case to Baltimore City, Mrs. Bertonazzi would still have been protected from the running of limitations. Even if limitations would otherwise have run out while the case was in the wrong court, the savings statute would have given her a grace period of 30 days in which to get the case refiled in the proper court. She only needed two hours.

Had those two ameliorative rules—Rule 2–327(b) and Rule 2–101(b)—been on the books, the *Bertonazzi* holding would almost certainly never have come to pass. Under the circumstances, we discern extremely little, if any at all, precedential

---

**7.** If a court with jurisdiction to hear a case nonetheless dismisses the case on the ground of *forum non conveniens,* that is indisputably an instance of "the court's declin[ing] to exercise jurisdiction."

vitality left in *Bertonazzi v. Hillman.* Its ghost should be laid to rest.

## An Inadequate Factual Predicate

On the facts of this case, the new (1992) saving statute would not do the appellants a bit of good. Because the Maryland Statute of Limitations had not run when the Pennsylvania case was terminated (whatever time of termination one chooses), the saving provision of Rule 2–101(b) would not even apply. Absent that precondition, there simply is no statute or rule providing for the plenary tolling of the Statute of Limitations during the pendency of a case in the wrong forum.

As we turn attention to the appellants' case, it is clear that the remedy provided by Maryland law to a plaintiff whose case is delayed by having been filed in the wrong court is not a plenary tolling of limitations for the total duration of the erroneous filing but rather a precise grace period of 30 days for any necessary refiling. In this case, of course, the appellants did not need the benefit of Rule 2–101(b)'s 30 day grace period, because when the Philadelphia County Court dismissed the case on the grounds of *forum non conveniens* on July 24, 2008, they still had two years and seven months within which to refile the case timely in Baltimore. Even figuring from the affirmance of the dismissal by the Pennsylvania intermediate appellate court on June 15, 2010, they still had eight months within which to accomplish a timely refiling of the case in Baltimore (or four months and eight days figuring from September 27, 2010). Under any of those languid and latitudinarian deadlines, they utterly failed to exhibit a shred of diligence. Dissatisfied by the only relief provided by rule or statute, the appellants would have us invent a new form of relief. We have no such power, even were we so inclined. (We are not.)

Even if the Maryland Statute of Limitations had run out on the case while it was still pending in Pennsylvania, the only relief available to the appellants would have been pursuant to Rule 2–101(b), which would have given them a 30–day period

of grace within which to file, following the dismissal of the suit in Philadelphia County. As a matter of law, there would be no other avenue of relief available. And even if, purely *arguendo,* other forms of relief had been available, the appellants, because of their utter lack of diligence, would have failed to qualify for such relief, as a matter of fact.

### *Christensen* and *Swam:* Transcendent Policy Considerations

Still persisting, however, in their effort to come up with some new variety of relief, the appellants seek to find in *Bertonazzi* a juridical fountainhead of tolling exceptions, optimistically pointing to such cases as 1) *Christensen v. Philip Morris,* 162 Md.App. 616, 875 A.2d 823 (2005), *aff'd by Philip Morris v. Christensen,* 394 Md. 227, 905 A.2d 340 (2006); and 2) *Swam v. Upper Chesapeake Medical Center,* 397 Md. 528, 919 A.2d 33 (2007), as its doctrinal outpouring. The two cases, however, resist such easy categorization. They are not part of the ripple effect of *Bertonazzi.*

As much as the appellants here look to *Christensen* as authority for some generic "equitable tolling doctrine," what *Christensen* dealt with was a far more specific and far more limited "doctrine of equitable *class action* tolling." 162 Md. App. at 638–39, 875 A.2d 823. *Christensen* was from start to finish a case tied to class action law. The bottom line, to be sure, was that "during the pendency of the class action lawsuit ... limitations was suspended for potential class members." 162 Md.App. at 659, 875 A.2d 823. At issue, however, was a basic clash between two competing social and legal policies: statutes of limitation, on the one hand, and class action law, on the other. In the Court of Appeals's affirming opinion, Judge Raker set out the two necessary preconditions that must be satisfied before the Court of Appeals will recognize a tolling exception to a statute of limitations:

> [W]e will recognize a tolling exception to a statute of limitations *if, and only if, the following two conditions are met:* (1) *there is persuasive authority or persuasive policy considerations supporting the recognition of the tolling*

*exception* and (2) recognizing the tolling exception is consistent with the generally recognized purposes for the enactment of statutes of limitations.

394 Md. at 238, 905 A.2d 340 (emphasis supplied).

The opinions of both the Court of Special Appeals and the Court of Appeals laid out meticulously the "persuasive policy considerations" supporting a class action tolling exception. Judge Hollander pointed out for the Court of Special Appeals that:

> Maryland's class action mechanism is found in Maryland Rule 2–231. Our rule is almost identical to Rule 23 of the Federal Rules of Civil Procedure, from which it derives.

162 Md.App. at 639, 875 A.2d 823. The opinions of both courts relied heavily on the Supreme Court's decision in *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), construing Federal Rule 23. The opinion of this Court first articulated the general principle that, basically, Maryland will not recognize a tolling exception to the Statute of Limitations absent some legislative expression authorizing such an exception:

> [W]e are mindful that *the Legislature and the Court of Appeals* have surely known of the Supreme Court's construction of the federal class action rule, yet *neither has acted to adopt the concept of class action tolling.*
>
> We are equally aware that Maryland courts "have long maintained a rule of strict construction concerning the tolling of the statute of limitations." To that end, the Court of Appeals has "long adhered to the principle that *where the legislature has not expressly provided for an exception in a statute of limitations, the court will not allow any implied or equitable exception to be engrafted upon it.*"

162 Md.App. at 655, 875 A.2d 823 (emphasis supplied). The Court of Appeals also recognized that the creation of a tolling exception required not simply a sympathetic case but a solid grounding in Maryland law:

> As a threshold matter, *we first consider the issue of whether this Court has the authority to recognize a tolling*

*exception to statutes of limitations* akin to the *American Pipe* class action tolling exception.

394 Md. at 236–37, 905 A.2d 340 (emphasis supplied). Judge Raker's opinion then relied on Maryland Rule 2–231 dealing with class actions as the required predicate on which a class action tolling exception might be created:

> *In assessing whether we have authority to recognize a version of the American Pipe class action tolling rule, it is also significant that the principal justification for recognition of such a rule is that it is necessary to preserve the integrity of the class action procedures set out in Md. Rule 2–231.* The rules of Procedure established by this Court in its exercise of its rulemaking power have the force of law. *Thus,* insofar as *our recognition* of an *American Pipe class action tolling rule is grounded in Rule 2–231,* it differs from those situations where we have declined to recognize a tolling exception in part because there was no provision in existing law that supported the tolling exception.

394 Md. at 241, 905 A.2d 340 (emphasis supplied).

Recognizing a legitimate authority to create a class action tolling exception was but half the battle. The opinion of this Court explained how the recognition of the class action tolling exception had been deemed necessary by the Supreme Court in the *American Pipe* case in order "to protect the policies undergirding the class action procedure." 162 Md.App. at 645, 875 A.2d 823. The majority opinion in *American Pipe,* 414 U.S. at 550–51, 94 S.Ct. 756 had pointed out how the failure to toll the statute of limitations would work to the detriment of class action law.

> [T]he commencement of the action satisfied the purpose of the limitation provision as to all those who might subsequently participate in the suit as well as for the named plaintiffs. *To hold to the contrary would frustrate the principal function of a class suit* because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitation

period would be *to file earlier individual motions to join or intervene as parties—precisely the multiplicity of activity which Rule 23 was designed to avoid in those cases where a class action is found "superior to other available methods* for the fair and efficient adjudication of the controversy." (Emphasis supplied).

In its subsequent opinion to the same effect in *Crown, Cork & Seal v. Parker,* 462 U.S. 345, 350–51, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), the Supreme Court elaborated on the policy clash:

A *putative class member* who fears that class certification may be denied *would have every incentive to file a separate action prior to the expiration of his own period of limitations.* The result would be *a needless multiplicity of actions—precisely the situation that Federal Rule* of Civil Procedure *23 and the tolling rule of American Pipe were designed to avoid.*

(Emphasis supplied).

The discussions by both Courts in *Christensen* did not involve the mere personal fortunes of an individual litigant. The Statute of Limitations itself routinely handles such cases. The clash in *Christensen* was on a higher plateau. It was a confrontation between conflicting policies. Judge Hollander's opinion described the much higher stakes on the table in that case:

To be sure, *there are competing policy interests at stake here—"those inherent in the rules providing for class actions, e.g.,* judicial economy and efficiency in litigation, *and those inherent in statutes of limitation.* . . ." Notwithstanding the reluctance of the Court of Appeals to expand limitations by way of tolling, we cannot ignore the rationale of the wealth of cases that have applied the doctrine of *class action equitable tolling.* In our view, a holding to the contrary would undermine *a key goal in the enactment of the class action rule—a reduction in the multiplicity of needless lawsuits. In the absence of class action tolling, class members would have no alternative but to protect*

*their interests by rushing to intervene in the class action as named plaintiffs,* prior to a ruling on class certification, or by filing individual lawsuits. *This would surely frustrate the purpose of the class action rule,* in that *it would generate "needless duplication" and overwhelm the courts* with a corresponding loss of "efficiency and economy of litigation" that the class action rule was intended to achieve. 162 Md.App. at 659, 875 A.2d 823 (emphasis supplied).

In *Kumar v. Dhanda,* 198 Md.App. at 348, 17 A.3d 744 Judge Deborah Eyler explained how the policy consideration favoring class action suits was the critical factor in *Christensen's* recognition of the tolling exception:

The Court concluded that the tolling exception principle was satisfied because tolling was necessary to protect the class action procedure adopted by rule in Maryland, and therefore *policy considerations militated in favor of tolling.*

(Emphasis supplied). There is nothing comparable at stake in the present case, and the *Christensen* case has no applicability to it.[8]

The inapplicability of the 5–2 decision in *Swam v. Upper Chesapeake Medical Center* to the present case is for precisely the same reason. A plaintiff's mistake in misreading an ambiguous statute caused her to file a medically-related claim but not a strict medical claim with the Health Care Office

---

**8.** Even if, arguendo, the Statute of Limitations had run in Maryland while the appellants' case was still pending in Philadelphia County and even if, arguendo, the case there had been terminated not on a ground of *forum non conveniens* but because the appellants' case had been part of a class action and the class was then decertified, the appellants would still find scant succor in *Christensen.* As Judge Raker pointed out for the Court of Appeals, 394 Md. at 255, 905 A.2d 340:

We express no opinion as to whether we would recognize the doctrine of cross-jurisdictional class action tolling, under which the filing of a putative class action in a different jurisdiction tolls the statute of limitations for putative class members to file individual claims in the jurisdiction recognizing cross-jurisdictional tolling while the issue of class certification is pending in the other jurisdiction. *The supreme courts of states that recognize class action tolling have split on the issue of whether to adopt cross-jurisdictional tolling.*

(Emphasis supplied).

instead of with the circuit court. A significant factor in tolling the Statute of Limitations while the claim was before the Health Care Office in that case was not only the ambiguity of the qualifying law but the policy consideration of the "Court's broad interpretation of the Health Claims Act" and its deliberate decision to be "over-inclusive as opposed to under-inclusive in terms of covered claims." As Judge Eldridge explained:

> In the present case, while we have held that the Swams' claim is outside the purview of the Health Claims Act, we are aware that *the proper forum may not have been entirely obvious to the claimant.* ... Mrs. Swam's injury was very much medically-related, occurring in a hospital, and inflicted because of the alleged negligence of a health care provider. *In light of the Court's broad interpretation of the Health Claims Act, and its willingness to be over-inclusive as opposed to under-inclusive in terms of covered claims,* we should approach a claimant's choice of the proper forum, as it affects limitations, in the same spirit.

397 Md. at 541, 919 A.2d 33 (emphasis supplied). That is policy language *par excellence,* and the decision involves far more than the routine pros and cons of an individual litigant. In the present case, no policy concerns are in any way implicated.

### *Kumar v. Dhanda:* The Necessity For Protective Filing

The completely compatible opinions of *Kumar v. Dhanda,* 198 Md.App. 337, 17 A.3d 744 (2011) and *Kumar v. Dhanda,* 426 Md. 185, 43 A.3d 1029 (2012) add yet further demerit to the appellants' cause. The two cases together establish the following rule: If, even while a case is pending in one forum, there is the theoretical possibility that it may end up being tried at a later time in a different forum, the diligent litigant is obligated to guard against a running of the Statute of Limitations in that other forum by a protective filing of the claim in that possible future forum.

Dr. Kumar and Dr. Dhanda entered into an employment contract on August 31, 2001. The contract included a mandatory non-binding arbitration clause. It also included a non-

competition clause that prohibited Dr. Dhanda from engaging in the practice of urology within specified geographic limits and for three years after his termination of employment. After a tangle of convoluted procedures not here pertinent, Dr. Kumar filed suit against Dr. Dhanda on March 16, 2009, in the Circuit Court for Montgomery County. Dr. Dhanda moved to dismiss the suit, asserting that the claims were time-barred by the general three-year Statute of Limitations. The trial judge agreed and granted the motion to dismiss. The Court of Special Appeals affirmed that dismissal. The Court of Appeals affirmed the Court of Special Appeals.

With the latest possible accrual date for the regular breach of contract claim being August 31, 2002, and the latest possible accrual date for the breach of the non-competition clause being August 31, 2005, Judge Eyler held for this Court, 198 Md.App. at 343, 17 A.3d 744:

> There is no dispute that *the alleged breaches* of contract by Dr. Dhanda *took place more than three years before suit was filed* in this case.

(Emphasis supplied).

The mandatory but non-binding arbitration hearing had been held on March 28, 2008. The arbitrator finally rendered his findings on June 20, 2008. In attempting to fend off the dismissal of his claim by the circuit court, Dr. Kumar argued that the running of limitations was effectively tolled during the time that the case was mandatorily in arbitration. Judge Eyler pinpointed the issue before the Court:

> Accordingly, Dr. Kumar's causes of action under the Agreement accrued more than three years before suit was filed, and therefore were time-barred when suit was filed. *Only if the limitations period was suspended after it started to run—i.e.,* limitations was tolled either by statute or by the doctrine of judicial tolling—*would the outcome be otherwise.*

198 Md.App. at 346, 17 A.3d 744 (emphasis supplied).

Judge Greene for the Court of Appeals identified precisely the same issue of whether the running of limitations had been tolled as the dispositive question:

We now examine the issue implicated by Petitioner's second question before this Court, namely, *whether the limitations period was tolled by* either a legislative or *judicial exception at any point after accrual.* We can find no applicable exception to Maryland Code § 5–101 of the Courts and Judicial Proceedings Article, or language within the Maryland Uniform Arbitration Act, Maryland Code §§ 3–201 to 3–234 that would toll the statute of limitations in this case.

426 Md. at 204, 43 A.3d 1029 (emphasis supplied).

Judge Eyler explained that the mandatory but non-binding arbitration clause did not affect the accrual date of the cause of action. It simply imposed on a diligent litigant, with a weather eye on the limitations horizon, the obligation to speed up the arbitration process and/or to take other protective steps:

> The fact that Dr. Kumar and Dr. Dhanda had contracted, pursuant to the Agreement, to engage in non-binding arbitration as a condition precedent to bringing suit in circuit court did not mean that Dr. Kumar's causes of action (or Dr. Dhanda's causes of action) did not accrue under CJP section 5–101 when all of their elements had arisen. (Indeed, both parties' causes of action necessarily had to have accrued even before arbitration was undertaken; otherwise the arbitrator would not have had the claims before him to resolve.) It meant only that *the parties,* and each of them, *had to take timely steps to engage in arbitration before limitations expired; enter into a further agreement to toll limitations; or file suit and request a stay pending arbitration.*

198 Md.App. at 345, 17 A.3d 744 (emphasis supplied). The opinion also gave us a useful adverb as it referred to the precaution of "filing suit *prophylactically* to guard against the running of the statute of limitations." *Id.* n. 3.

Although the suit could not actually go to trial in the circuit court until the arbitration had been wrapped up, there was nothing to inhibit its being filed prophylactically:

In any event, as the time at which the limitations period would expire approached, *there was nothing to prevent Dr. Kumar from filing his claims* in the proper jurisdiction *and asking the court to stay them pending arbitration.*

*Id.* (emphasis supplied). Judge Greene reaffirmed for the Court of Appeals that conclusion that diligence presupposes taking sound precautions:

*[N]othing prevented Petitioner from filing his claims and requesting a stay if timely arbitration was in doubt.* Thus, while completion of arbitration may have represented a condition precedent to litigation, because of Petitioner's failure timely to file in court he "cannot be heard to complain now for [his] own tarriance."

426 Md. at 210, 43 A.3d 1029 (emphasis supplied).

This Court in its opinion examined the many ways in which a cautious plaintiff can protect itself from the running of limitations:

Nevertheless, arbitration agreements are private contracts the terms of which are subject to negotiation by the parties. Limitations is an affirmative defense that will be waived if not raised, and therefore is not jurisdictional. *The parties negotiating a mandatory non-binding arbitration agreement thus are free to agree to a provision tolling limitations generally or in the event the arbitration process is not concluded before limitations would run.* If the parties so agree, it is known from the outset that limitations will not be a bar. *If the parties do not so agree, their situation is likewise clear.* Limitations will apply (assuming it is raised as an affirmative defense), and therefore *any party wanting to make certain that a remedy in circuit court will be available will need to take steps to ensure that arbitration is completed before limitations runs or to file suit and request a stay within the limitations period if timely completion appears unlikely.*

In any event, the private nature of arbitration agreements allows parties *to contractually protect themselves against the running of limitations. Their ability to do so militates*

*against a judicial policy that would suspend the running of limitations merely because an arbitration the parties agreed to undertake was not completed before limitations expired.*

198 Md.App. at 350, 17 A.3d 744 (emphasis supplied).

In its affirming opinion, the Court of Appeals again expressed its disinclination to invent "a judicial tolling exception" where the legislature has not provided one:

*[W]e decline to adopt a judicial tolling exception to accomplish a result neither intended by the legislature under the Act,* nor consistent with the purposes of the statute of limitations. See *Garay v. Overholtzer,* 332 Md. 339, 359, 631 A.2d 429, 439 (1993) (noting the general rule that *"where the legislature has not expressly provided for an exception* in a statute of limitations, *the court will not allow any implied or equitable exception to be engrafted upon it."*).

426 Md. at 204, 43 A.3d 1029 (emphasis supplied).

In the present case, of course, there was no prophylactic filing of the appellants' claim in Maryland nor even a more leisurely filing of the claim in the months, or years, following the dismissal of the case in Philadelphia County. The appellants lose on the facts and they lose on the law.

### The Tintinnabulation of the Bell

For these non-diligent and incautious appellants, the curfew bell did ring. With rare, rare exceptions not here applicable, once a cause of action accrues and limitations begin to run, time marches on.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**