75 A.3d 401

**Judith ADEDJE**

v.

**WESTAT, INC., et al.**

**No. 0620, Sept. Term, 2012.**

Court of Special Appeals of Maryland.

Sept. 6, 2013.

2

Joyce E. Smithey (Rifkin, Livingston, Levitan & Silver, LLC, on the brief), Annapolis, MD, (Dean R. Fuchs, Schulten,

Ward & Turner, LLP, on the brief), Atlanta, GA, for Appellant.

Todd J. Horn (Venable, LLP, on the brief) Baltimore, MD, for Appellee.

Panel: ZARNOCH, HOTTEN and ARRIE W. DAVIS (Retired, Specially Assigned), JJ.

HOTTEN, J.

Following dismissal of a proposed collective action in the United States District Court for the District of Maryland, appellant, Judith Adedje, filed a complaint, individually, in the Circuit Court for Montgomery County against appellees, Westat, Inc. ("Westat"), Westat's Senior Vice President, Renee Slobasky, Westat's Vice President, Patricia Montalvan, and Westat's Assistant Director of Survey Operations for the National Health and Nutrition Examination Surveys Project, Katrina Apodaca, alleging violations of Maryland's Wage and Hour Law and Wage Payment and Collection Law, regarding unpaid overtime wages.[1] Appellees filed a motion to dismiss appellant's complaint, asserting a failure to state a claim upon which relief could be granted and that appellant's claims were barred by the statute of limitations. The circuit court granted

---

1. Md.Code (1991, 2008 Repl. Vol., 2012 Cum. Supp.), § 3–427(a) of the Labor and Employment Article provides:

> (a) *Action by employee.*—If an employer pays an employee less than the wage required under this subtitle, the employee may bring an action against the employer to recover the difference between the wage paid to the employee and the wage required under this subtitle. Md.Code (1991, 2008 Repl. Vol., 2012 Cum. Supp.), § 3–507.2 of the Labor and Employment Article reads:
> (a) *In general.*—Notwithstanding any remedy available under § 3–507 of this subtitle, if an employer fails to pay an employee in accordance with § 3–502 or § 3–505 of this subtitle, after 2 weeks have elapsed from the date on which the employer is required to have paid the wages, the employee may bring an action against the employer to recover the unpaid wages.
> (b) *Awards and costs.*—If, in an action under subsection (a) of this section, a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs.

**4**

appellees' motion. Appellant noted an appeal, and presents two questions for our consideration:

1. Is [a]ppellant's claim for overtime wages under the [Maryland Wage Payment and Collection Law] barred by the statute of limitations despite being tolled under class action judicial tolling during [a]ppellant's participation in prior collective action litigation in *Syrja v. Westat* under the [Fair Labor Standards Act]?

2. Has [a]ppellant stated a claim for overtime wages under the [Maryland Wage Payment and Collection Law] in claiming wages which [a]ppellee was required by law to pay [a]ppellant and which [a]ppellee withheld from [a]ppellant during [a]ppellant's employment and upon her termination?

For the reasons outlined below, we answer the first question positively, and we need not address the second question. Accordingly, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

The procedural history of appellant's efforts to obtain her alleged overtime wages originated with *Syrja v. Westat, Inc.*, 756 F.Supp.2d 682 (D.Md.2010). On July 27, 2009, the plaintiff-employee, Steven Syrja ("Mr. Syrja"), filed a complaint in the U.S. District Court for the District of Maryland ("Maryland U.S. District Court"), maintaining that Westat violated the Family and Medical Leave Act and Title VII of the Civil Rights Act of 1964 because it failed to compensate him for applicable overtime pay. *Id.* at 683. On August 13, 2009, Mr. Syrja filed an amended complaint, on behalf of himself and all other similarly situated individuals, and further claimed a violation of the Fair Labor Standards Act and Maryland's Wage Payment and Collection Law.[2] *Id.*

The Maryland U.S. District Court offered a comprehensive description of Westat and its employees as follows:

---

2. Mr. Syrja also filed a second amended complaint on February 24, 2010. *Syrja,* 756 F.Supp.2d at 685.

Westat is a Rockville, Maryland-based statistical survey research company that collects and analyzes data on various subjects for government agencies, businesses, and foundations. Since the 1980s, the federal Centers for Disease Control and Prevention [ ] have engaged Westat to assist with the collection of medical data for its National Health and Nutrition Examination Surveys ("NHANES"). The NHANES project, which endeavors to provide a statistical snapshot of the baseline health of Americans, requires that annual data be collected at several thousand selected households throughout the country. The data collected through the NHANES project eventually serve as a source for health science study and analysis for federal agencies, universities, and other public and private research entities. To facilitate the collection of data for NHANES, Westat employs "field interviewers"—also sometimes referred to as "data collectors" [ ]—whose job is to visit households selected by NHANES statisticians to request their participation in the study and to collect information about the background and health of the households' members. . . .

     *   *   *

Westat's NHANES field interviewers work at [specific locations] for approximately 48 weeks each year. They receive two vacation breaks-one in the summer and another in the winter—lasting approximately two weeks each. Given that the interviewers must work at several different [locations] each year, the job requires travel on a full-time basis. The interviewers stay in hotels or apartments in the general vicinity of their assigned [location] and receive per diem allowances to cover expenses for meals and incidentals. After arriving at a [location], each field interviewer receives materials containing addresses and basic information for households that have been identified as possible candidates for the NHANES study. Each field interviewer travels to each address assigned to him, greets the person who answers the door, and describes the purpose of the NHANES project. The field interviewer then conducts a "household screening," a process through which he collects demograph-

ic data about the people in the household, enters the data in a portable computer, and receives feedback from the computer indicating whether one or more candidates for the NHANES study resides in the household. If at least one such candidate is identified, the field interviewer attempts to persuade the candidate(s) to submit to a comprehensive health interview, to be followed by a medical examination to be conducted by a different group of Westat personnel. To a significant degree, Westat's NHANES field interviewers set their own schedules. Although they are obliged to report to their respective [ ] offices a few times each week, it is generally up to the interviewers to decide when to begin their work days, decide when to take breaks, determine their own daily and weekly travel itineraries, and decide when to end their respective work days.

The quantity and nature of work assignments among field interviewers vary considerably. Some interviewers are assigned as few as 20 households in a [location], others as many as 100. The variations depend upon the geography of the [location], the resulting time travel required, the preferences of the [location's] managers, and the skill and experience levels of the field interviewers, among other things. The complexity of a given interview also varies from household to household.

Because they generally work alone in the [locations] and largely set their own schedules, the interviewers are responsible for recording and reporting their work hours. To facilitate the reporting process, Westat provides each field interviewer with blank timesheets. On a weekly basis, each field interviewer records his or her work hours on a timesheet and submits the timesheet to his [or her] study manager for approval. Once the timesheet is approved, the study manager delivers the timesheet to Westat's payroll department for processing.

*Id.* at 683–85.

Appellant, an Alabama resident, was employed as a Westat field interviewer from April 2003 to May 2007. After this

position ended, appellant alleged that she too was entitled to overtime wages for working in excess of forty hours per week. On September 15, 2009, in addition to other Westat employees, appellant filed written consent to join the *Syrja* case, stating, "I hereby consent and agree to opt-in to become a plaintiff in a lawsuit brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq., to recover unpaid wages and overtime wages from my current/former employer, Westat, Inc." Thereafter, Mr. Syrja filed a motion for conditional class certification relating to his Fair Labor Standards Act claim. *Id.* The Maryland U.S. District Court determined that:

> [T]he adjudication of multiple claims in this case would require the parties, the Court, and perhaps eventually a jury, to engage in an unmanageable assortment of individualized factual inquiries. At a minimum, these inquiries would require an examination of: each individual field interviewer's work assignments; the nature and length of the assignments, his [or her] interactions with his [or her] respective managers; the details of how and when he [or she] was instructed to complete his [or her] timesheets; the notes he [or she] took during his [or her] household screenings; the computer entries he [or she] made during his [or her] household screenings; the policies in place regarding hours to be worked in his [or her] particular [location(s)]; whether he [or she] was ever authorized to work overtime; and whether he [or she] was in fact compensated or uncompensated for his [or her] overtime hours[.] [1]

*Id.* at 688. On November 2, 2010, the Maryland U.S. District Court issued an order that denied Mr. Syrja's motion for conditional class certification. *Id.* at 690.

On December 2, 2010, appellant and nineteen other *Syrja* plaintiffs filed a new complaint in the Maryland U.S. District Court, alleging violations of the Fair Labor Standards Act and Maryland's Wage Payment and Collection Law. In response, appellees filed a motion to sever and dismiss. Following a motions hearing, the Maryland U.S. District Court issued

another order on September 1, 2011, stating (emphasis in original) (capitalization in original):

1. Defendants' [m]otion to [s]ever and [d]ismiss [ ] is **GRANTED IN PART AND DENIED IN PART.** The [m]otion is **GRANTED** insofar as: (a) the claims of all [the] [p]laintiffs *other than* Judith Adedje are **DISMISSED WITHOUT PREJUDICE** from this suit; to the extent those [p]laintiffs wish to pursue their claims against [d]efendants, they must do so by filing separate lawsuits; and (b) the claims of [p]laintiff Judith Adedje are **DISMISSED WITH LEAVE TO AMEND.** The [m]otion is **DENIED** insofar as the Court declines to address limitations issues at this time;

2. Plaintiff's [M]otion for [L]eave to [A]dd [P]laintiffs [Paper No. 20] is **DENIED;** and

3. Plaintiff Adedje shall have **20 DAYS** to file an [a]mended [c]omplaint containing allegations sufficiently specific to satisfy the plausibility standard articulated by the [U.S.] Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 [127 S.Ct. 1955, 167 L.Ed.2d 929] (2007), and *Ashcroft v. Iqbal* [556 U.S. 662], 129 S.Ct. 1937 [173 L.Ed.2d 868] (2009).

Thereafter, on September 30, 2011, appellant filed a complaint in the Circuit Court for Montgomery County, alleging that she "was entitled to overtime premium compensation from [appellees] of one and one-half times her regular rate of pay for hours she worked beyond the forty per week for [appellees,]" pursuant to Maryland's Wage and Hour Law and Wage Payment and Collection Law.[3] On December 9, 2011,

---

3. In appellant's complaint, she alleged a claim pursuant to Md.Code (1991, 2008 Repl. Vol.), § 3–507 of the Labor and Employment Article, which concerns the Maryland Commissioner of Labor and Industry's authority "to attempt to resolve any issue involved in the violation informally by mediation and, with the consent of the employee, to request the Maryland Attorney General to bring an action on the employee's behalf to collect any amounts that may be due." *Friolo v. Frankel*, 373 Md. 501, 514, 819 A.2d 354 (2003). Appellant's action

appellees filed a motion to dismiss, asserting that (1) appellant's claims were time-barred because her employment ended in May 2007, and equitable tolling pursuant to 28 U.S.C. § 1367(d) did not apply;[4] (2) appellant failed to allege a violation of the Wage and Hour Law in the *Syrja* action; and (3) appellant failed to state a claim upon which relief could be granted regarding the Wage Payment and Collection Law.[5] On January 10, 2012, appellant filed an opposition to the motion, maintaining that equitable tolling under 28 U.S.C. § 1367(d) did toll the statute of limitations and that there was a valid Wage Payment and Collection Law claim.

During a hearing on March 15, 2012, appellees submitted three "statute of limitations" charts that included all the relevant dates relating to appellant's and other Westat employees' filings and dismissals. The circuit court offered appellant the option to submit a supplemental brief and/or respond to appellees' charts. On March 30, 2012, appellant filed a supplemental memorandum and a chart to address alleged inaccuracies in appellees' charts. On April 16, 2012, appellees filed a response to appellant's supplemental brief, and averred that appellant's submission did not survive the motion to dismiss. On May 4, 2012, the circuit court issued an opinion and order, stating:

... [S]ince the Wage and Hour Law was never asserted by [appellant] in either federal case, the tolling provision of [28

---

was dismissed before the scheduled settlement conference on July 12, 2012.

4. 28 U.S.C. § 1367(d), Supplemental Jurisdiction, provides:
   (d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

5. On December 28, 2011, appellant filed a motion to extend the deadline to respond to appellees' motion to dismiss, which the circuit court granted on January 5, 2012.

U.S.C. §] 1367(d) will not be applied to Count One.[6] Count One is limited to any alleged claims occurring on and after September 30, 2008. Given that [appellant's] employment ended in May 2007, Count One is barred by the statute of limitations. [Appellant] did assert the Wage Payment and Collection Law state claim in *[Adedje, et al. v. Westat, et al.,* Civil Action No. 10–3378], filed on December 2, 2010, which was subsequently dismissed September 2, 2011, thereby tolling Count Two of the state law claim for ten (10) months. However, even with the application of the tolling provision, the statute of limitations still expired in March 2011, thereby barring Count Two.

\* \* \*

[Appellant] does not assert that Westat failed to pay her regularly or all that was due upon termination, and therefore Count Two of [appellant's] complaint is dismissed. [ (citation omitted).]

Appellant noted a timely appeal.

## STANDARD OF REVIEW

According to the Court of Appeals, under Md. Rule 2–322(b)(2),

[A] defendant may, in a civil suit in a circuit court, seek dismissal of a case through preliminary motion when the complaint fails "to state a claim upon which relief can be granted." A defendant asserts in such a motion that, despite the truth of the allegations, the plaintiff is barred from recovery as a matter of law. . . .

*North Am. Specialty Ins. v. Boston Med. Group,* 170 Md.App. 128, 135, 906 A.2d 1042 (2006) (quoting *Porterfield v. Mascari*

---

6. In appellant's complaint, Count One was entitled, "**Maryland Wage and Hour Law Against All Defendants**" and Count Two was entitled, "**Maryland Wage and Hour Law Against Defendant Westat, Inc.**" We perceive that appellant erred in Count Two's title because Count Two's description only related to Maryland's Wage Payment and Collection Law.

*II, Inc.*, 374 Md. 402, 413–14, 823 A.2d 590 (2003)) (additional citations omitted).

> ... We must assume the truth of, and view in a light most favorable to the non-moving party, all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may reasonably be drawn from them, and order dismissal only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff.... We must confine our review of the universe of facts pertinent to the court's analysis of the motion to the four corners of the complaint and its incorporated supporting exhibits, if any.

*Kumar*, 426 Md. at 193, 43 A.3d 1029 (quoting *Parks v. Alpharma, Inc.*, 421 Md. 59, 72, 25 A.3d 200 (2011)). Similar to motions for summary judgment, we examine the circuit court's ruling to determine whether it was legally correct. *Id.* (quoting *Parks*, 421 Md. at 72, 25 A.3d 200) (quotations omitted), *accord Doe v. Roe*, 419 Md. 687, 693, 20 A.3d 787 (2011) (" 'In reviewing the [c]ircuit [c]ourt's grant of a motion to dismiss, our task is confined to determining whether the [circuit] court was legally correct in its decision to dismiss.' ") (quotations omitted). We therefore review a motion to dismiss pursuant to the de novo standard. *Gomez v. Jackson Hewitt, Inc.*, 427 Md. 128, 142, 46 A.3d 443 (2012) (citing *Reichs Ford Rd. Joint Venture v. State Rds. Comm'n of the State Highway Admin.*, 388 Md. 500, 509, 880 A.2d 307 (2005)).

## DISCUSSION

**Whether Appellant's Claim For Overtime Wages Under The Maryland Wage Payment And Collection Law Was Barred By The Statute Of Limitations.**

The Court of Appeals has traditionally concluded that "the question of accrual in [Md.Code (1974, 2013 Repl. Vol.), § 5–101 of the Courts and Judicial Proceedings Article (hereinafter "Cts. & Jud. Proc.") ] is left to judicial determination." *Shailendra Kumar, P.A. v. Dhanda*, 426 Md. 185, 193, 43 A.3d 1029 (2012) (quoting *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95, 756 A.2d 963 (2000)). Cts. & Jud. Proc. § 5–101 provides:

A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.

Therefore, on a general basis, because appellant's employment ended in May 2007, the filing deadline would have been in May 2010. Appellant filed her complaint in the circuit court on September 30, 2011. Ordinarily, the action would have been a year and four months beyond the filing deadline, and thus, time-barred by the statute of limitations.

Appellant acknowledges the abovementioned contention, but maintains that:

[Her claim] was tolled on September 15, 2009, when she opted in to the *Syrja* collective action.[ ] . . ., This added 13 months and 17 days, the time between when [appellant] opted in the *Syrja* action and when the [Maryland U.S. District] [C]ourt denied certification on November 2, 2010, to the statute of limitations. The statute of limitations was tolled again on December 2, 2010, when [appellant] filed her action in federal court, through the action's dismissal on September 2, 2011. This added 9 months, plus an additional 30 days, under [28 U.S.C.] § 1367(d), to the statute of limitations. The [circuit] court [ ] correctly tolled [appellant's] claim for the 10 months that the federal *Adedje* action was pending, but did not address [class action] tolling for the time of the *Syrja* collection action.

Thereby, appellant contends that her claim was timely pursuant to 28 U.S.C. § 1367(d) and the class action tolling doctrine. Appellees aver that 28 U.S.C. § 1367(d) was appellant's exclusive means of tolling, and that the class action tolling doctrine did not apply to *Syrja*. Furthermore, appellees alleged that Maryland does not recognize cross-jurisdictional class action tolling, and that appellant only opted-in Mr. Syrja's Fair Labor Standards Act, not the Wage Payment and Collection Law claim.

■■ Although some courts have often merged equitable tolling and class action tolling, we agree with the jurisdictions that have found principal differences between the two, stating:

> [W]e believe that there is a fundamental distinction between equitable tolling and class action tolling. In a class action, the putative class representative has satisfied the prerequisites to suit [sic], *including filing within the applicable limitations period;* tolling is applied to preserve the rights of absent class members during the pendency of certification proceedings. In contrast, equitable tolling seeks to excuse *untimely* filing by an individual plaintiff and is generally applicable where the plaintiff has been induced or tricked by the defendant's conduct into allowing the filing deadline to pass. Because the purpose behind class action tolling is different from the purpose behind equitable tolling, we find that the cases concerning equitable tolling are inapposite.

*Hess v. I.R.E. Real Estate Income Fund, Ltd.*, 255 Ill.App.3d 790, 195 Ill.Dec. 935, 629 N.E.2d 520, 531 (1993). *See also Stransky v. HealthONE of Denver, Inc.*, 868 F.Supp.2d 1178, 1181 (D.Co.2012) ("Furthermore, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.") (additional citations omitted) (internal quotations omitted); *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1188 (9th Cir.2009) (The purpose of equitable tolling "is to toll the statute of limitations in favor of a plaintiff who acted in good faith where the defendant is not prejudiced by having to defend against a second action.") (additional citation omitted). Though distinct, we do acknowledge that jurisdictions can apply the equitable tolling doctrine in their class actions to toll their statute of limitations. *See Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 33 (Tenn.2007) ("A majority of other states have adopted a rule allowing equitable tolling during the pendency of a class action in their own courts.") (additional citations omitted).

Most of appellant's argument is predicated on *Philip Morris USA, Inc., et al. v. Christensen, et al.*, 394 Md. 227, 905

A.2d 340 (2006) [hereinafter *"Christensen II"*]. In *Christensen II*, the Court of Appeals determined "whether the commencement of a class action suspends the applicable statute of limitations as to asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 231, 905 A.2d 340. Similar to the case at bar, the procedural history of the plaintiffs' efforts to obtain damages commenced with another case, *Richardson, et al. v. Phillip Morris Inc., et al.* [hereinafter *"Richardson"*]. *See Philip Morris Inc., et al. v. Angeletti,* 358 Md. 689, 701, 752 A.2d 200 (2000).[7]

In *Richardson,* an injured party filed a complaint, on behalf of similarly situated individuals [hereinafter *"Richardson"* parties], against the defendants-cigarette manufacturers, for diseases sustained as a result of smoking the defendants' tobacco products. *Christensen, et al. v. Philip Morris USA, Inc., et al.,* 162 Md.App. 616, 620, 875 A.2d 823 (2005) [hereinafter *"Christensen I"*]. The *Richardson* parties requested a class certification, which the circuit court granted. *Id.*

Russell Christensen ("Mr. Christensen") was not a named party in *Richardson,* but was highly involved. *Id.* at 621, 875 A.2d 823. Mr. Christensen submitted an affidavit on behalf of the *Richardson* parties, and presented a *de bene esse* deposition, where he explained his cigarette usage and contraction of lung cancer. *Id.* The defendants petitioned the Court of Appeals to order the circuit court to vacate the class certification, which the Court issued. *Id.* (additional citation omitted). Thereafter, the *Richardson* parties moved for a "stipulation of dismissal" in the circuit court, where they reached an agreement that:

> [F]or the purpose of limitations, any claims reasserted by the named parties within six months of the dismissal would be deemed filed on the same date that *Richardson* had been

---

7. *Richardson, et al. v. Phillip Morris Inc., et al.* differed in its subsequent history, and became *Philip Morris Inc., et al. v. Angeletti,* 358 Md. 689, 752 A.2d 200 (2000). *Richardson* was the underlying class certification case of *Angeletti.*

filed. The [s]tipulation, however, did not extend to [non-named parties].

*Id.* A few months later, Mr. Christensen died of lung cancer, *id.* at 618, 875 A.2d 823, and his wife and children filed a survival and wrongful death action in the circuit court against the defendants. *Christensen II,* 394 Md. at 232, 905 A.2d 340. The defendants filed a motion for summary judgment, averring that the statute of limitations expired, and the circuit court agreed. *Id.* at 234, 905 A.2d 340.

On appeal, our Court vacated the grant of summary judgment, determining that "during the pendency of the class action lawsuit in *Richardson,* limitations was [sic] suspended for potential class members."[ ] *Christensen I,* 162 Md.App. at 659, 875 A.2d 823. The defendants appealed to the Court of Appeals, and argued that if Maryland Courts acknowledged a class action tolling exception, it did not apply. *Christensen,* 394 Md. at 236, 905 A.2d 340.

The Court of Appeals indicated that it would recognize a tolling exception if "(1) there [was] persuasive authority or persuasive policy considerations supporting the recognition of the tolling exception, and (2) [if] recognizing the tolling exception [was] consistent with the generally recognized purposes for the enactment of statutes of limitations." *Id.* at 238, 905 A.2d 340 (additional citations omitted). Furthermore, the Court emulated its additional factors from the U.S. Supreme Court's *American Pipe and Construction Co., et al. v. Utah, et al.,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) [hereinafter *"American Pipe "*], stating:

> In particular, we emphasize that, in order to claim the benefits of class action tolling, the individual suit must " 'concern the same evidence, memories, and witnesses as the subject matter of the original class suit,' " *American Pipe,* 414 U.S. at 562 [94 S.Ct. 756] . . . (Blackmun, J., concurring), and that " '[c]laims as to which the defendant was not fairly placed on notice by the class suit [were] not protected under *American Pipe.*' " [ (citation omitted) ]. In our view, these notice restrictions on the scope of the

*American Pipe* class action tolling rule are necessary because they ensure that the rule is consistent with the purposes of statutes of limitations.

*Christensen,* 394 Md. at 256, 905 A.2d 340.

Thereafter, the Court determined that the requisites for the *Christensen* plaintiffs were satisfied. *Id.* at 265, 905 A.2d 340. The·Court found that Mr. Christensen was a member of the *Richardson* putative class of persons. *Id.* With an exception for one cigarette manufacturer, the defendants and claims were the same from *Richardson.* *Id.* Furthermore, neither party contested that the *Christensen* plaintiffs' claims did not accrue prior to the circuit court's grant of the class action certification in *Richardson.* *Id.* at 266, 905 A.2d 340. Because Mr. Christensen was actively involved in *Richardson,* the defendants possessed sufficient notice of the action. *Id.* As a result, the Court concluded that class action tolling applied, and the *Christensen* plaintiffs' complaint was timely. *Id.* at 267, 905 A.2d 340.

Appellees support their contentions with *Antar, et al. v. Mike Egan Ins. Agency, Inc., et al.,* 209 Md.App. 336, 58 A.3d 609 (2012). In *Antar,* the plaintiffs owned a Baltimore City building, which was destroyed by a fire. *Id.* at 338, 58 A.3d 609. The plaintiffs filed a claim with the defendants-insurance companies, which was denied because an inspection indicated that the plaintiffs failed to use smoke detectors. *Id.*

On February 4, 2008, the plaintiffs filed an action in a Pennsylvania circuit court for breach of contract and bad faith. *Id.* at 339, 58 A.3d 609. One of the defendants moved for a dismissal, which the court granted with leave to refile the complaint in a Maryland court. *Id.* Instead, however, on June 15, 2010, the plaintiffs appealed their case to Pennsylvania's intermediate appellate court, which affirmed the circuit court's decision. *Id.* On May 18, 2011, the plaintiffs finally filed a complaint in a Maryland circuit court, averring that the defendants breached their contract and were negligent. *Id.* The defendants filed a motion to dismiss, which the court granted, holding that the claim was time-barred. *Id.*

On appeal, the plaintiffs maintained that the circuit court erred because "the running of the limitations period in Maryland should have been tolled for the entire length of time that the suit was pending in Pennsylvania." *Id.* at 340, 58 A.3d 609. Our Court stated:

[T]he [plaintiffs] did not need the benefit of [Md.] Rule 2–101(b)'s [8] 30 day grace period, because when the Philadelphia County Court dismissed the case on the grounds of *forum non conveniens* on July 24, 2008, they still had two years and seven months within which to refile the case timely in Baltimore. Even figuring from the affirmance of the dismissal by the Pennsylvania intermediate appellate court on June 15, 2010, they still had eight months within which to accomplish a timely refiling of the case in Baltimore (or four months and eight days figuring from September 27, 2010). Under any of those languid and latitudinarian deadlines, they utterly failed to exhibit a shred of diligence. Dissatisfied by the only relief provided by rule or statute, the [plaintiffs] would have us invent a new form of relief. We have no such power, even were we so inclined. (We are not).

Even if the Maryland [s]tatute of [l]imitations had run out on the case while it was still pending in Pennsylvania, the only relief available to the [plaintiffs] would have been pursuant to [Md.] Rule 2–101(b), which would have given them a 30–day period of grace within which to file, following the dismissal of the suit in Philadelphia County. As a matter of law, there would be no other avenue of relief

---

8. Maryland Rule 2–101(b) provides:

**(b) After Certain Dismissals by a United States District Court or a Court of Another State.** Except as otherwise provided by statute, if an action is filed in a United States District Court or a court of another state within the period of limitations prescribed by Maryland law and that court enters an order of dismissal (1) for lack of jurisdiction, (2) because the court declines to exercise jurisdiction, or (3) because the action is barred by the statute of limitations required to be applied by that court, an action filed in a circuit court within 30 days after the entry of the order of dismissal shall be treated as timely filed in this State.

available. And even if, purely *arguendo,* other forms of relief had been available, the [plaintiffs], because of their utter lack of diligence, would have failed to qualify for such relief, as a matter or fact.

*Id.* at 355–56, 58 A.3d 609. Accordingly, our Court affirmed the circuit court's ruling. *Id.* at 365, 58 A.3d 609.

In addition to the abovementioned cases, our Courts have examined other issues relating to tolling the statute of limitations. *See Kumar,* 426 Md. at 210, 43 A.3d 1029 (The Court of Appeals determined that a mandatory arbitration proceeding did not suspend the statute of limitations because the plaintiff should have initiated arbitration before limitations expired.); *Walko Corp. v. Burger Chef Sys., Inc.,* 281 Md. 207, 216, 378 A.2d 1100 (1977) (The Court of Appeals concluded that the statute of limitations was not tolled when a motion to intervene was pending in the U.S. District Court for the District of Columbia.); *Bertonazzi v. Hillman,* 241 Md. 361, 369–70, 216 A.2d 723 (1966) (The Court of Appeals determined that the filing of an action in an improper venue tolled the statute of limitations because the defendant had notice and the Court's ruling incorporated the "spirit" of Cts. & Jud. Proc. § 5–101.).

██ Cross-jurisdictional class-action tolling is " 'a rule whereby a court in one jurisdiction tolls the applicable statute of limitations based on the filing of a class action in another jurisdiction.' " *Patterson v. Novartis Pharms. Corp.,* 909 F.Supp.2d 116, 122 (D.R.I.2012). We acknowledge that *Christensen* and *Antar* concern class action judicial tolling and cross-jurisdictional tolling respectively. However, we have not found any Maryland cases that have analyzed these topics together, as the circuit court noted, *"Christensen* did not analyze [28 U.S.C.] § 1367 nor did it involve a class action filed in *federal* court and a subsequent individual claim filed in *state* court." While this issue is one of first impression in Maryland, *see Christensen,* 394 Md. at 255, n. 9, 905 A.2d 340 ("We express no opinion as to whether we would recognize the doctrine of cross-jurisdictional class action tolling. . . ."), "[t]he supreme courts of states that recognize class action tolling

have split on the issue of whether to adopt cross-jurisdictional tolling." *Id.*

Specifically, our sister states' cases only involve class actions. To determine the difference between these types of lawsuits, we examine them on a federal level.

> Unlike [the Federal] Rule [of Civil Procedure] 23 [ ("Rule 23") ] class actions, plaintiffs must "opt in" to a [Fair Labor Standards Act ("FLSA") ] collective action.... There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided by FLSA § 16(b). In a Rule 23 proceeding a class is described; if the action is maintainable as a class action, each person within the description is considered to be a class member and, as such, is bound by judgment, whether favorable or unfavorable, unless he [or she] has "opted out" of the suit. Under § 16(b) of FLSA, on the other hand, no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he [or she] affirmatively "opted in" the class; that is, given his [or her] written consent.... This difference means that every plaintiff who opts in to a collective action has party status, whereas unnamed class members in Rule 23 class actions do not. Consequently, although the original plaintiffs in a collective action may pursue the suit on a representative basis, each FLSA claimant has the right to be present in court to advance his or her own claim. Conversely, only those plaintiffs who have opted in are bound by the results of the litigation. [ (citation omitted) ].

*McKnight v. D. Houston, Inc.,* 756 F.Supp.2d 794, 808 (S.D.Tex.2010) (quoting *La Chapelle v. Owens–Ill., Inc.,* 513 F.2d 286, 288 (5th Cir.1975)) (internal quotations omitted).

Because the instant case concerns collective action, we limit our focus to the analysis and reasoning of other jurisdictions to assist us in determining whether the filing of a collective action in a federal court tolls the running of the statute of limitations when the federal court dismisses the action for

improper collective action status, and the complainant thereafter files a complaint in the state court.

All cases concerning cross-jurisdictional class action tolling began with an analysis of *American Pipe*. In *American Pipe*, the plaintiff-state ("Utah") filed a complaint in its federal district court, against the defendants-companies, alleging that the defendants engaged in illegal price fixing concerning the sale of concrete and steel. *Id.* at 541, 94 S.Ct. 756. As a result of countless actions against the defendants, the U.S. District Court for the District of Utah transferred the case to the U.S. District Court for the Central District of California ("California U.S. District Court"). *Id.* at 542, 94 S.Ct. 756. Thereafter, the defendants filed a motion, alleging that Utah did not satisfy class action requirements, and the court agreed. *Id.* Several days after the court issued its order, additional parties moved to intervene as plaintiffs. *Id.* at 543–44, 94 S.Ct. 756. The California U.S. District Court denied the parties' motion, determining that the statute of limitations had expired. *Id.* at 544, 94 S.Ct. 756. The U.S. Court of Appeals for the Ninth Circuit affirmed and denied in part. *Id.* at 544–45, 94 S.Ct. 756. The U.S. Supreme Court granted *certiorari* to provide the federal courts with a harmonious solution in reviewing these specific type of cases. *Id.* at 545, 94 S.Ct. 756.

The U.S. Supreme Court examined the differences amongst the courts, as well as the purpose of the statute of limitations, which was advancing justice, ensuring equality, and judicial efficiency. *Id.* at 554, 94 S.Ct. 756. In considering these factors, and attempting to capture the spirit of federal class action procedures, the U.S. Supreme Court concluded that, "the commencement of a class action suspend[ed] the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* (footnote omitted).

Approximately a decade later, the U.S. Supreme Court broadened *American Pipe*, and determined that when an original class action certification was denied, at that moment,

the statute of limitations was tolled for those class members who desire[d] to file their individual suits in federal court. *Crown, Cork & Seal Co., v. Parker,* 462 U.S. 345, 354, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) [hereinafter *"Crown, Cork"*]. Although *American Pipe* and *Crown, Cork* are the foundational analysis of cross-jurisdictional class action tolling, they only involve tolling of one jurisdiction's statute of limitations, as opposed to involving two different jurisdictions, such as the federal and state level.

In *One Star v. Sisters of St. Francis, Denver, Colorado,* 752 N.W.2d 668, 672 (S.D.2008), the plaintiffs-siblings alleged that they were sexually abused by their secondary school's clergymen between 1960 to 1971. In 1995, the plaintiff-sister ("sister") discussed her account with another sexually abused victim, and the plaintiff-brother ("brother") drafted a letter regarding the alleged sexual abuse to a newspaper in May 2001. *Id.* at 672.

In April 2003, the brother was a member of a class action against the United States, which was filed in the U.S. Court of Federal Claims. *Id.* at 673. The claim "was filed on behalf of Native American children who were allegedly abused at Roman Catholic boarding schools." *Id.* In June 2004, the plaintiffs filed a complaint against the defendants, who were the secondary school and related entities. In November 2004, the class action was dismissed for procedural defects. *Id.* Following discovery, the defendants filed a motion for summary judgment, alleging that the plaintiffs' action was barred by the statute of limitations. *Id.* The circuit court denied the motion, and the defendants appealed. *Id.* at 673–74.

On appeal, the plaintiffs averred that their claims did not accrue until 2002 because during that time, they could appreciate the effect that the sexual abuse had on their lifestyles, and thus, the statute of limitations did not expire. *Id.* at 674. Moreover, the plaintiffs maintained that the class action tolled the statute of limitations. *Id.* at 680.

The South Dakota Supreme Court examined what constituted "accrual," *id.* at 675, and determined that the sister and

brother possessed notice of the effect by 1995 and 2001, respectively. *Id.* at 677–78. Consequently, because they filed their action in November 2004, their claims were barred. *Id.* at 680. Furthermore, the South Dakota Supreme Court indicated that class action tolling (1) offered notice to the defendants of a prospective action and (2) advanced judicial efficiency. *Id.* First, the defendants were not named parties in the class action, so there was no notice of the plaintiffs' claims. *Id.* Furthermore, "[the] [p]laintiffs [ ] failed to cite any authority supporting class action tolling in cases involving different defendants, different claims, in different jurisdictions[.]" *Id.* at 681. As a result, the South Dakota Supreme Court did not apply cross-jurisdictional tolling, and reversed the circuit court's ruling regarding the defendants' motion for summary judgment. *Id.* at 683.

In *Maestas v. Sofamor Danek Group, Inc.*, 33 S.W.3d 805, 807 (Tenn.2000), the plaintiffs-patients alleged that the defendants'-manufacturers' medical screws caused them to sustain additional injury to their backs after they were hospitalized. A few years later, parties, including the plaintiffs, initiated a class action against the defendants in the U.S. District Court for the Eastern District of Pennsylvania ("Pennsylvania U.S. District Court"). *Id.* The Pennsylvania U.S. District Court denied the class action certification. *Id.* Thereafter, the plaintiffs filed individual lawsuits against the defendants in a Tennessee circuit court. *Id.* Following discovery, the defendants filed a motion for summary judgment, alleging that the plaintiffs' claims were barred by the statute of limitations. *Id.* The circuit court granted the defendants' motion, and the Tennessee intermediate court affirmed. *Id.*

The Tennessee Supreme Court granted *certiorari*, and determined whether "cross-jurisdictional tolling would involve the tolling of the applicable Tennessee statute of limitations during the period in which the plaintiffs sought class certification as part of the unsuccessful class[ ]action filed in the [Pennsylvania U.S. District Court]." *Id.* The Tennessee Supreme Court denoted that adopting the cross-jurisdictional class action doctrine would assist the federal courts in review-

ing class actions, but that its courts lacked interest in advancing "efficiency and economy of the class action procedures of another jurisdiction[.]" *Id.* at 808. Furthermore, the doctrine would create "fishing expeditions" because complainants would choose Tennessee as their "hub" to file their claims "because [its] cross-jurisdictional tolling doctrine would have effectively created an overly generous statute of limitations." *Id.* To avoid "protective filings," in which "the plaintiffs [would] wish to preserve their right to file suit in Tennessee while they [sought] class certification elsewhere[,]" the Tennessee Supreme Court indicated that staying the proceedings would resolve this potential issue. *Id.* at 808–09. Lastly, if Tennessee applied the doctrine, it would grant the federal courts authorization to determine whether Tennessee's statute of limitations began to run, which was in strict contradiction to the Tennessee legislature's intent. *Id.* at 809. Accordingly, the Tennessee Supreme Court did not adopt the cross-jurisdictional class action tolling doctrine, and affirmed the grant of the summary judgment motion. *Id.*

In *Portwood et al. v. Ford Motor Co.*, 183 Ill.2d 459, 233 Ill.Dec. 828, 701 N.E.2d 1102 (1998), the plaintiffs-consumers filed a class action against the defendant-car manufacturer in the U.S. District Court for the District of Columbia, alleging that the defendant manufactured defective transmissions that caused them to sustain property damage. The U.S. District Court for the District of Columbia denied the class action certification, and the plaintiffs thereafter filed an action in an Illinois circuit court. *Id.* 233 Ill.Dec. 828, 701 N.E.2d at 1102–03. Following discovery, the defendant filed a motion to dismiss, averring that the plaintiffs' claims were barred by the statute of limitations. *Id.* 233 Ill.Dec. 828, 701 N.E.2d at 1103. The Illinois circuit court granted the defendant's motion, and the Illinois appellate court affirmed. *Id.*

On appeal, the Illinois Supreme Court stated that, "[u]nless all states simultaneously adopt[ed] the rule of cross-jurisdictional class action tolling, any state which independently [did] so [would] invite into its courts a disproportionate share of suits which the federal courts have refused to certify as class

actions after the statute of limitations ha[ve] run." *Id.* 233 Ill.Dec. 828, 701 N.E.2d at 1104. Moreover, the Court indicated that "[s]tate courts should not be required to entertain stale claims simply because the controlling statute of limitations expired while a federal court considered whether to certify a class action." *Id.* Accordingly, the Illinois Supreme Court did not recognize cross-jurisdictional class action tolling, *id.*, and affirmed the circuit court's ruling in granting the defendant's motion for summary judgment. *Id.* 233 Ill.Dec. 828, 701 N.E.2d at 1105.

We also examine a federal case that has examined Maryland's doctrine regarding cross-jurisdictional class action tolling. In *Thelen v. Massachusetts Mut. Life Ins. Co.*, 111 F.Supp.2d 688, 690 (D.Md.2000), the plaintiffs-policy owners filed a class action against the defendant-insurance company, alleging that the defendant employed fraudulent and deceptive provisions in its insurance policies. Thereafter, the defendant filed a motion to dismiss, averring that the statute of limitations had expired. *Id.* at 691.

On appeal, the plaintiffs maintained that the pendency of two respective class actions in Mississippi and New York, *id.* at 694, n. 5, which occurred concurrently with their action, tolled the running of the statute of limitations. *Id.* at 694. The Maryland U.S. District Court stated:

> In Maryland, [ ] there is no case directly addressing the issue, but what precedents there are, augur [sic] against its adoption. *See, e.g., Hecht v. Resolution Trust Corp.*, 333 Md. 324 [333, 635 A.2d 394] (1994).[9] Indeed, the existence of [Md.] Rule 2–101(b), which provide[d] a limited savings

---

9. In *Hecht*, 333 Md. at 324, 635 A.2d 394, the Court of Appeals indicated that, "[w]e have long maintained a rule of strict construction concerning the tolling of the statute of limitations. Absent legislative creation of an exception to the statute of limitations, we will not allow any implied and equitable exception to be engrafted upon it." (quoting *Booth Glass Co. v. Huntingfield Corp.*, 304 Md. 615, 623, 500 A.2d 641 (1985); *Walko*, 281 Md. at 211, 378 A.2d 1100, *McMahan v. Dorchester Fert. Co.*, 184 Md. 155, 160, 40 A.2d 313 (1944)) (internal quotations omitted).

window if an identical action [was] dismissed by another court, clearly indicate[d] the absence, under Maryland law, of the broad, cross-jurisdictional class action equitable tolling advocated by [the] plaintiffs.

*Id.* at 694–95. Accordingly, the Court granted the defendant's motion to dismiss. *Id.* at 695. *But see In re Linerboard Antitrust Litigation,* 223 F.R.D. 335, 353 (E.D.Pa.2004) (The Pennsylvania U.S. District Court determined that "the Maryland Court of Appeals would adopt cross-jurisdictional class action tolling in antitrust class actions filed in federal court" because "the Maryland General Assembly has instructed courts interpreting the [Maryland Antitrust Act] to ' "be guided by the interpretation given by the federal courts to the various federal [antitrust] statutes" ' " and because the Maryland Court of Appeals has summoned its courts to examine other jurisdictions.)

Although *Wade v. Danek Med., Inc.,* 182 F.3d 281 (4th Cir.1999) does not involve Maryland law, we nevertheless analyze it because the Maryland U.S. District Court discussed it in *Thelen. Wade's* facts are similar to *Maestas,* 33 S.W.3d at 807 because both involved the same class action. In 1985, the injured plaintiff underwent back surgery, and the defendant's medical screws caused her to sustain additional pain and contract a disease. *Wade,* 182 F.3d at 284. A class action was filed in the Pennsylvania U.S. District Court in 1993 against the defendants—manufacturers, and although the plaintiffs were not named parties, they were "putative" parties. *Id.* Thereafter, in 1995, the Pennsylvania U.S. District Court denied the class action certification, and the plaintiffs filed suit in the U.S. District Court for the Eastern District of Virginia ("Virginia U.S. District Court"). *Id.* The defendants filed a motion for summary judgment, averring that the statute of limitations had expired, and the Court granted the motion. *Id.*

On appeal, the Fourth Circuit determined "whether a state court would engage in equitable tolling during the pendency of a class action in another court—in this case, a federal court in

another jurisdiction." *Id.* at 287. The Fourth Circuit examined *Portwood,* and stated:

First, and most importantly, the Commonwealth of Virginia simply has no interest, except perhaps out of comity, in furthering the efficiency and economy of the class action procedures of another jurisdiction, whether those of the federal courts or those of another state. Second, if Virginia were to adopt a cross-jurisdictional tolling rule, Virginia would be faced with a flood of subsequent filings once a class action in another forum is dismissed.... Third, if Virginia were to allow cross-jurisdictional tolling, it would render the Virginia limitations period effectively dependent on the resolution of claims in other jurisdictions, with the length of the limitations period varying depending on the efficiency (or inefficiency) of courts in those jurisdictions [ (additional citations omitted) ].

*Id.* at 287–88. Accordingly, the Fourth Circuit concluded that the Virginia Supreme Court would not recognize cross-jurisdictional equitable tolling, and affirmed. *Id.* at 288.

There are several other federal court decisions that decline to adopt the doctrine before the state's highest court has had the opportunity to consider the issue. *See Patterson,* 909 F.Supp.2d at 123 ("Without a "well-plotted" path showing an "avenue of relief" that the Massachusetts Supreme Judicial Court would take on cross[-]jurisdictional class[ ]action tolling, and with no apparent consensus among the few states that have addressed the question, this Court declines [the] [p]laintiffs' invitation and refuses to embark into an "unexplored frontier[.]"); *Casey v. Merck & Co., Inc.,* 678 F.3d 134, 138 (2nd Cir.2012) ("The Supreme Court of Virginia has now confirmed that, under Virginia law, neither Virginia's tolling statute nor equitable principles provide for cross-jurisdictional tolling...."); *Soward v. Deutsche Bank AG,* 814 F.Supp.2d 272, 282 (S.D.N.Y.2011) ("In the face of these overwhelming precedents, I cannot say that New York would adopt cross-jurisdictional tolling and decline to import the doctrine into New York's law."); *Ottaviano v. Home Depot, Inc., USA,* 701 F.Supp.2d 1005, (N.D.Ill.2010) ("While the Illinois Supreme

Court has adopted the *American Pipe* rule for class actions filed in state court . . . , it expressly declined to extend the rule to "cross-jurisdictional tolling.") (additional citation omitted); *In re Fosamax Prods. Liability Litigation*, 694 F.Supp.2d 253, 258 (S.D.N.Y.2010) ("The Court has no reason to believe that Virginia would join the few states that currently recognize cross-jurisdictional class action tolling, and thus it refuses to expand Virginia law in that manner."); *In re Urethane Antitrust Litigation*, 663 F.Supp.2d 1067, 1082 (D.Kan.2009) ("[Because] Indiana courts have not considered the issue of cross-jurisdictional tolling[,] . . . the Court decline[d] to import a new tolling rule into the state's limitations law.") (additional citations omitted); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir.2008) ("[T]he weight of authority and California's interest in managing its own judicial system counsel us [sic] not to import the doctrine of cross-jurisdictional tolling into California law."); and *In re Vioxx Prods. Liability Litigation*, 522 F.Supp.2d 799, 809–811 (E.D.La.2007) (Although both Pennsylvania and Puerto Rico recognized class action tolling, their doctrines did not extend to cross-jurisdictional tolling).

Although we relate our ruling to the abovementioned cases, we observe that other jurisdictions and courts have ruled otherwise. In *Dow Chem. Corp. v. Blanco*, 67 A.3d 392 (Del.2013), the plaintiff-employee joined a class action, filed in a U.S. District Court in the District of Texas ("Texas U.S. District Court") against the defendant-employer when he inhaled toxins at the workplace. The Texas U.S. District Court denied the class certification, and the plaintiff filed an individual suit in a Delaware circuit court. *Id.* The defendant filed a motion to dismiss, averring that the plaintiff's action was barred by the statute of limitations. *Id.* The court ruled for the plaintiff, determining that "Delaware law recognize[d] the doctrine of cross-jurisdictional class action tolling." *Id.*

On appeal to the Delaware Supreme Court, it stated:

Reading *American Pipe* too narrowly would defeat an important purpose of a class action, which [was] to promote judicial economy. Allowing cross-jurisdictional tolling rec-

ognize[d] and [gave] effect to the proposition that the policy considerations underlying our statute of limitations [were] met by the filing of a class action. Cross-jurisdictional tolling also discourage[d] duplicative litigation of cases within the jurisdiction of our courts. If members of a putative class [could] not rely on the class action tolling exception to toll the statute of limitations, they [would] be forced to file "placeholder" lawsuits to preserve their claims. This would result in wasteful and duplicative litigation.

*Id.* at 395. Accordingly, the Court affirmed. *Id.* at 399.

In *Stevens v. Novartis Pharms. Corp.*, 358 Mont. 474, 247 P.3d 244, 248 (2010), the physician prescribed the plaintiff-patient a medication regimen to combat a cancerous disease. Thereafter, the plaintiff sustained chronic pain, and attributed the defendant's-manufacturer's medication as the cause. *Id.* at 248–49. During this time, three class actions were filed in a U.S. District Court for the District of Tennessee ("Tennessee U.S. District Court"), specifically *Becker, et al. v. Novartis Pharms. Corp.*, alleging that the defendant failed to warn its consumers of the risks of its products. *Id.* at 249. However, the Tennessee U.S. District Court denied class certification. *Id.*

A few months before the Tennessee U.S. District Court denied certification, the plaintiff filed an action against the defendant in a Montana circuit court. *Id.* The defendant filed a motion for summary judgment, averring that the statute of limitations had expired. *Id.* The circuit court denied the motion, and the jury ruled in favor of the plaintiff. *Id.*

On appeal, the plaintiff alleged that "because the *Becker* class action contained a request for worldwide class certification, and contained a claim for failure to warn against the dangers of Zometa . . ., the statute of limitations was tolled as to [her], along with all other potential class members, under the class action tolling rule." *Id.* at 250 (internal quotations omitted). The defendant maintained that because the class action occurred in Tennessee, and not Montana, the Montana Supreme Court should have ignored the cross-jurisdictional

class action tolling doctrine. *Id.* at 252. The Court disagreed, and stated:

> But as we have observed above, *all* plaintiffs, regardless of residency, are constitutionally guaranteed the right to file suit in Montana. We conclude that the best judge of these competing arguments will be experience.... Thus, although avoiding the possibility of a rush of out-of-state plaintiffs filing in our court system is concededly a valid policy objective, we consider this objective less compelling than competing considerations. We suspect that a greater burden on the court system will be imposed by *not* adopting the rule, as plaintiffs would be required to file protective individual suits in Montana courts to avoid limitations defenses, while otherwise relying on a pending class action suit filed elsewhere. This directly conflicts with the rationale underlying the class action tolling rule: to promote judicial economy by encouraging individual plaintiffs to defer to class action suits to protect their claims. We see no reason why jurisdictional boundaries should operate as a bar to the application of this policy.

*Id.* at 256. Accordingly, the Montana Supreme Court determined that the plaintiff's complaint was filed in a timely fashion. *Id.* at 257.

Akin to *Wade* and *Maestas*, the plaintiffs in *Vaccariello v. Smith & Nephew Richards, Inc.*, 94 Ohio St.3d 380, 763 N.E.2d 160, 161–62 (2002), were also involved in the same class action against the defendant-manufacturer regarding excessive back pain as a result of the defendant's medical screws. The defendant moved for summary judgment, avowing that the plaintiff's complaint was barred by the statute of limitations, *id.* at 162, but the Ohio circuit court disagreed. *Id.* It surmised that the class actions filed in the U.S. Pennsylvania District Court tolled the statute, and thereby denied the defendant's motion. *Id.* at 161–62.

On appeal to the Ohio Supreme Court, it stated:

> We conclude that it is more important to ensure efficiency and economy of litigation than to rigidly adhere to [its

previous case].... We hold that the filing of a class action, whether in Ohio or the federal court system, tolls the statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.

*Id.* at 163. Accordingly, the Court determined that the plaintiff's complaint was timely filed. *Id.*

As previously indicated, jurisdictions are split regarding this issue, but we agree with the majority. Recognizing a tolling exception would assist in advancing the effectiveness of suits in other jurisdictions. However, this would deplete our judicial resources, and render our state the focal point for complainants whose class certifications were denied. Moreover, if we recognized an exception, our Courts would be at the mercy of other jurisdictions, waiting on them to rule on the cases. Therefore, we liken our holding to *Maestas, Portwood,* and *Wade.*

In the case at bar, we first reiterate the *Phillip Morris II* elements regarding when a class action tolling exception applies: (1) whether the plaintiff was a party to the prior action; (2) whether the action concerns the same facts, claims, defendants, and witnesses as the prior action; (3) whether the defendant was placed on notice of another claim being filed; (4) whether persuasive authority and policy exist that support use of the tolling exception; and (5) whether recognition of the exception harmonizes with the purpose of statutes of limitation.

It is logical to conclude that in the instant case, appellant was a member of *Syrja's* putative class because she filed a written consent to join the *Syrja* case, and became a named party. However, although appellant's action in the circuit court may have concerned the same defendants, witnesses, and evidence, it did not concern the same claim. According to *Syrja,* 756 F.Supp.2d at 683, Mr. Syrja "filed a [m]otion for [c]onditional [c]lass [c]ertification [ ], in which, pursuant to 29 U.S.C. § 216(b), he ask[ed] the Court to conditionally certify a class of current and former Westat employees" relating to his

Fair Labor Standards Act claim only. Because appellant's complaint was predicated on an alleged violation of Maryland's Wage and Hour Law and Wage Payment and Collection Law, the second *Phillip Morris II* element was not met. Therefore, appellees were not placed on notice of a claim based on either of appellant's arguments, considering appellant only opted-in the Fair Labor Standards Act claim.

The two remaining questions are whether persuasive authority and policy considerations exist that support use of the tolling exception and whether recognition of the exception parallels with the General Assembly's statutes of limitation. As we formerly stated, appellant contends that her claim is timely pursuant to 28 U.S.C. § 1367(d) and the class action tolling doctrine. To answer the remaining questions, we discuss the purpose of statutes of limitation, as follows:

> Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost [ ].... (citation omitted). They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate.

*Walko*, 281 Md. at 210, 378 A.2d 1100 (quoting *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 314, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945)) (additional citations omitted) (quotations omitted).

In analyzing 28 U.S.C. § 1367(d), we discuss the editor's note, which states:

> Subdivision (d) of § 1367 recognizes the serious statute of limitations problems a claim may face after it has been "declined" in a federal action. It may now be too late under the state statute of limitations to bring a state action on the claim. Subdivision (d) answers this dilemma by assuring

that the claim shall have at least a 30–day period for the state action after it is dismissed by the federal court. The dismissal moment should be taken to be the moment of dismissal in the district court. Even if an appeal is taken to a court of appeals from the district court dismissal, the party whose claim has been dismissed under § 1367 does best to commence the state action within the prescribed time measured from the district court dismissal, and not from some later appellate affirmance of it. Perhaps, after commencing the state court action in such a situation, the plaintiff can ask the state court to stay the action—now timely commenced and pending—while the federal appeal proceeds. This seems to be the safest course until there is a definitive federal ruling about whether the 30–day period may be measured from an appellate determination. The matter is not addressed by the statute, and anything connected with the statute of limitations must be handled conservatively.

In the case at bar, appellant's position ended in May 2007. On September 15, 2009, appellant filed a written consent to join the *Syrja* case. At this juncture, appellant had eight months to file a timely claim in Montgomery County. On November 2, 2010, the Maryland U.S. District Court issued an order that denied Mr. Syrja's motion for conditional class certification because "the multifarious factual differences among the proposed class members ma[de] the case an unsuitable candidate for class certification." *Syrja*, 756 F.Supp.2d at 690. Despite the obvious decision to file individual claims, on December 2, 2010, appellant and nineteen other *Syrja* plaintiffs executed a defiant approach to the Court's opinion and order, and filed a new complaint together as a class. On September 2, 2011, the Maryland U.S. District Court again issued an order, which included meticulous details for clear understanding, stating, "(b) the claims of [p]laintiff Judith Adedje are **DISMISSED WITH LEAVE TO AMEND.** The [m]otion is **DENIED** insofar as the Court declines to address limitations issues at this time; ... 3. Plaintiff Adedje shall have **20 DAYS** to file an [a]mended [c]omplaint. . . . "

Although the Court afforded appellant the opportunity to continue with her action at the federal level, for reasons not apparent to us, she elected to file a complaint in the Circuit Court for Montgomery County on September 30, 2011. As we previously denoted, the editor's note of 28 U.S.C. § 1367(d) asserts that time should accrue at a federal district court's dismissal. Relating to the instant case, the Maryland U.S. District Court "dismissed" the action on November 2, 2010. Immediately after this, appellant could have filed a complaint in Montgomery County, and would have received a thirty day period pursuant to both 28 U.S.C. § 1367(d) and Md. Rule 2–101(b), as the filing deadline, based on three years from her Westat employment's end date, would have been tolled. However, as indicated previously, appellant elected not to avail herself of the course of action set forth in the Court's order, and was neither persuaded nor deceived by appellees for equitable tolling to apply.

Additionally, appellant's claims were not the same as the claim she opted-into, and therefore, appellees were not placed on notice. Furthermore, there were no persuasive authority or policy considerations that existed, as recognition of an equitable tolling and cross-jurisdictional class action tolling exception neither harmonized with the purpose of 28 U.S.C. § 1367(d) nor Cts. & Jud. Proc. § 5–101. Accordingly, appellant's claim for overtime wages under Maryland's Wage Payment and Collection Law was barred by the statute of limitations.

**JUDGMENTS OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY ARE AFFIRMED. COSTS TO BE PAID BY APPELLANT.**